720 A.2d 693

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Alfred K. ALBRECHT, Sr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 5, 1997.

Decided Nov. 23, 1998.

Reargument Denied Jan. 19, 1999.

32

34

36

38

Billy H. Nolas, Philadelphia, for Albrecht.

Diane Gibbons, Doylestown, Robert A. Graci, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

This is a direct appeal from the final order of the Court of Common Pleas of Bucks County denying Appellant's petition under the Post Conviction Relief Act (PCRA).[1] For the reasons discussed below, we affirm the order of the PCRA court.

Appellant was convicted by a jury of first degree murder, two counts of second degree murder, and arson for the killing

---

1. Act of May 12, 1982, P.L. 417, No. 122, 42 Pa.C.S. § 9541 et seq., as amended, April 13, 1988. In a death penalty case, the denial of post-conviction relief is directly reviewable by this Court. 42 Pa.C.S. § 9546(d).

of his wife, his mother and his daughter by setting their home on fire on the morning of May 1, 1979. The penalty was fixed at death.[2] On direct appeal, this court affirmed the judgment of sentence. *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (Pa.1986).

On December 28, 1990, Appellant filed a *pro se* petition under the PCRA. The Bucks County Public Defender was appointed to assist Appellant in filing an amended petition. On April 18, 1991, Governor Robert Casey signed a warrant of execution. The PCRA court entered a stay of execution on May 13, 1991.

The public defender withdrew when claims of the ineffectiveness of that office as appellate counsel were indicated. Attorney David L. Shenkle was then appointed and, on July 13, 1991, filed an amended petition raising seventy-two claims of error. Mr. Shenkle also requested an evidentiary hearing limited to his motion requesting public funds to hire experts to explore the application of new fire investigation techniques to the evidence admitted at Appellant's trial. A hearing was held on the motion on May 10, 1992, and it was denied by the PCRA court. Counsel filed a Petition for Extraordinary Review of that ruling in this court, which we denied on June 4, 1992.

■ Mr. Shenkle subsequently accepted employment with the Commonwealth of Pennsylvania, forcing his withdrawal from this case. Attorney Ronald H. Elgart was appointed to replace him on January 26, 1994 and filed a brief that explicitly waived all but three issues raised in Appellant's amended PCRA petition. Dissatisfied with Elgart's treatment of his case, Appellant wrote to the court and filed a *pro se* motion

2. The jury found that the sole aggravating factor, that Appellant knowingly created a grave risk of death to someone other than the victim during the commission of the offense, 42 Pa.C.S. § 9711(d)(7), outweighed all the mitigating factors, which were three: no significant history of criminal convictions, (e)(1), extreme mental or emotional disturbance, (e)(2), and "good worker", (e)(8)(catchall). Appellant also received two life sentences for the second degree murder convictions and a sentence of ten to twenty years incarceration for arson, each sentence to run consecutively to each other and the sentence of death.

seeking the appointment of new counsel. This request was denied on January 12, 1996, and Appellant's PCRA petition was denied on January 24, 1996. Attorneys Billy H. Nolas and Robert Brett Dunham of the Center for Legal Education, Advocacy and Defense Assistance succeeded Mr. Elgart as Appellant's counsel and this appeal followed.[3]

To be eligible for post-conviction relief, an appellant must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the errors or defects listed in 42 Pa.C.S. § 9543(a)(2), and that the issues he raises have not been previously litigated. An issue has been previously litigated if the highest appellate court in which an appellant could have had review as a matter of right has ruled on the merits of the issue, or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa.C.S. § 9544. If the allegations of error have not been finally litigated, the PCRA also requires that an appellant demonstrate that these allegations of error have not been waived or that, if waived, the conditions in either 42 Pa.C.S. § 9543(a)(3)(ii) or (iii)(amended 1995) have been met.[4]

Because of Mr. Elgart's decision to brief only three issues in the trial court, we do not have the benefit of the trial court's

3. Our standard of review in reviewing an order either granting or denying post-conviction relief is limited to examining whether the court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Lutz*, 492 Pa. 500, 505–07, 424 A.2d 1302, 1305 (Pa.1981).

4. Section 9543(a)(3) provided at the time Appellant filed the instant petition:

That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

The 1995 amendment to this subsection eliminated subsections (i) through (iii), and now provides only that the petitioner plead and prove that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3).

resolution of any of the other issues raised in this appeal. Further, we are faced with a threshold issue, in light of Mr. Elgart's explicit waiver of the remaining issues, as to whether the claims not entertained in the trial court are now beyond the power of this court to review under the terms of the PCRA.

Appellant seeks a remand to the trial court for an opportunity to litigate this PCRA petition anew on the grounds of the ineffectiveness of Attorney Elgart in waiving, against Appellant's wishes, the majority of claims raised in Appellant's amended petition.[5] The District Attorney argues that, under the PCRA, no claim for relief can be raised based upon the ineffectiveness of post-conviction counsel because there is no right to counsel in post-conviction proceedings under the Sixth Amendment to the United States Constitution. Appellant concedes the absence of such a right under the United States Constitution, but argues that the procedural right to appointment of counsel in a first PCRA petition requires that appointed counsel's representation be competent and effective in order that the appointment as of right be a meaningful one.[6]

The facts of this case raise serious concerns about Attorney Elgart's compliance with the obligations of his appointment by the PCRA court, and the suggestion that this court is without power to evaluate his performance gives us great hesitation. Here, David Shenkle, Appellant's first court-appointed counsel, evidently found some basis in the record to raise dozens of claims of error, yet his successor discarded all but three. Of those three claims, one was thoroughly litigated by his predecessor and had already been decided by the PCRA court. A

5. Specifically, Appellant argues that he "was not afforded full and fair post-conviction review, meaningful assistance from counsel and due process where PCRA counsel abandoned his duty as an advocate, filed a brief which was woefully inadequate, and—without Appellant's consent – purported to 'waive' numerous claims for relief." *Initial Brief of Appellant,* at 10.

6. Appellant also argues that meaningful representation by counsel is necessary to enforce our constitutional mandate that "the privilege of the writ of habeas corpus shall not be suspended . . ." Pa. Const. Art. I, § 14. In light of our disposition of this issue, we need not reach this argument.

second was patently frivolous, and the third raised an argument that this court has consistently rejected, and which was already decided in Appellant's direct appeal. Still more troubling is the abbreviated and perfunctory manner in which Mr. Elgart briefed these issues and his cursory explanation of the decision to relieve the court of the burden of deciding the remaining issues raised by Mr. Shenkle.

 The denial of PCRA relief cannot stand unless the petitioner was afforded the assistance of counsel. *Commonwealth v. Duffey*, 551 Pa. 675, 713 A.2d 63 (1998). While the appointment of counsel in PCRA proceedings has been made mandatory by our rules of criminal procedure, Pa.R.Crim.P. 1503–04, appointed counsel possesses the prerogative of declining to litigate a meritless petition. *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (Pa.1988). Nevertheless, counsel's decision in this regard is subject to exacting judicial review. *Id.* at 928–29.[7] Though we agree with the District Attorney's argument regarding the scope of the Sixth Amendment, *see Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 881 (Pa.1995), we have never found our power to review,

7. In *Turner* we adopted the approach of the Superior Court in *Commonwealth v. Finley*, 330 Pa.Super. 313, 479 A.2d 568 (Pa.Super.1984), *rev'd on other grounds*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), *aff'd on remand*, 379 Pa.Super. 390, 550 A.2d 213 (Pa.Super.1988), as to the appropriate means of ensuring the propriety of counsel's decision to withdraw from a PCRA appointment on the grounds of an absence of meritorious litigable issues. Currently, the judgment of PCRA counsel that a PCRA petition lacks merit must be supported by:

(1) A "no-merit" letter by [PCRA] counsel detailing the nature and extent of his review;
(2) The "no-merit" letter by [PCRA] counsel listing each issue the petitioner wished to have reviewed;
(3) The [PCRA] counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;
(4) The [PCRA] court conducting its own independent review of the record; and
(5) The [PCRA] court agreeing with counsel that the petition is meritless.

*Commonwealth v. Finley*, 550 A.2d at 215. There is much to Appellant's suggestion that, on the facts of this case, it would be anomalous if our ability to review the decisions of Attorney Elgart is less than that permitted where PCRA counsel seeks withdrawal.

and if necessary, remedy the deficiencies of counsel at the post-conviction stage circumscribed by the parameters of the Sixth Amendment. *See Commonwealth v. Albert,* 522 Pa. 331, 561 A.2d 736 (Pa.1989). As was so cogently stated in *Albert, supra:*

> It is axiomatic that the right to counsel includes the concomitant right to effective assistance of counsel. Indeed the right to counsel is meaningless if effective assistance is not guaranteed.

561 A.2d at 738 (citation omitted). Therefore, we find that Rule 1504 requires an enforceable right to effective post-conviction counsel.

 Appellant also urges this court to reach all the issues raised in this appeal, regardless of waiver, pursuant to the relaxed waiver doctrine. While it has been our "practice" to decline to apply ordinary waiver principles in capital cases, *e.g., Commonwealth v. Morris,* 546 Pa. 296, 684 A.2d 1037, 1042 n. 11 (Pa.1996), we will no longer do so in PCRA appeals.

Relaxed waiver, as an operating principle, was created to prevent this court from being instrumental in an unconstitutional execution. *See Commonwealth v. McKenna,* 476 Pa. 428, 383 A.2d 174 (Pa.1978); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (Pa.1982). Due to the unique severity and finality of the death penalty, this court has relaxed its waiver rules as to any claim raised on direct appeal for which the record permits review. The relaxation of waiver principles on direct appeal has been justified, in part, on grounds of judicial economy because it reduces the number and necessity of post-conviction relief petitions. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272, 275 (Pa.1974)(Pomeroy, J., dissenting). The ever-widening application of the doctrine has, in effect, virtually eliminated any semblance of finality in capital cases, and frustrated the efficient use of the resources of this court.

Waiver must necessarily be recognized at some point in the criminal process in order that finality be eventually achieved. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (Pa.1974).

The post-conviction appellate stage is an appropriate time to enforce the rules of waiver. Indeed, application of the doctrine of relaxed waiver in a PCRA proceeding runs afoul of the very terms of the Post–Conviction Relief Act, which excludes waived issues from the class of cognizable PCRA claims. 42 Pa.C.S. § 9543(a)(3). Upon reaching this stage of the criminal process, one who has not exercised the constitutional right to self representation has had the benefit of counsel at trial, on direct appeal, and in prosecuting the PCRA petition. Nevertheless, this court, in recognition of the fallibility of counsel and the daunting task of defending a person on trial for his life, has already considered any issues which trial counsel failed to present which were raised by counsel on direct appeal. Any meritorious claims which escape counsel's recognition on direct appeal can then be raised on grounds of counsel's ineffectiveness. We find these safeguards adequate to ensure the fairness of verdicts in capital cases, and that the negligible benefits of relaxed waiver at the PCRA appellate stage are more than outweighed by the need for finality and efficient use of the resources of this court. Henceforth, a PCRA petitioner's waiver will only be excused upon a demonstration of ineffectiveness of counsel in waiving the issue.

Appellant argues that, under *Commonwealth v. Albert, supra,* the appropriate remedy in the case of ineffective PCRA counsel is a remand to the PCRA court for appointment of substitute counsel to brief the issues waived in that court. He makes this argument rather than brief for appeal all of the issues he seeks to revive. *Albert,* however, does not control this case.

In *Albert,* the Superior Court affirmed the denial of post-conviction relief without reaching the merits of the issues raised. The court summarily dismissed the appeal because the appellant's brief did not conform to the Rules of Appellate Procedure, and because the legal arguments it contained were "disjointed, general and unintelligible." *Albert, supra,* at 737. This court granted allowance of appeal to review the effectiveness of post-conviction appellate counsel. After we recognized the existence, in this Commonwealth, of a right to effective

post-conviction counsel, this court determined that counsel's deficient performance had, in effect, denied the petitioner the right of appeal guaranteed by Art. V, § 9 of the Pennsylvania Constitution. *Id.* at 738. We then remanded the case to the Superior Court for appointment of appellate counsel to prepare a new appeal. Such a remand is the accepted remedy where counsel's deficient performance denies a petitioner "entirely" his right to appeal. *Commonwealth v. Mosteller,* 430 Pa.Super. 57, 633 A.2d 615, 618 (Pa.Super.1993).

In the case at bar Appellant has not been denied the right to appeal. Rather, counsel is merely faulted for forgoing some of the issues which the client wished to raise. In such a case, the relief available to an appellant for a claim that PCRA counsel's judgment was exercised in a legally ineffective manner is an evaluation of the claims prior counsel has forgone for a determination of ineffectiveness.[8] *See Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 367–68 (Pa.1995). Therefore, we will grant relief only if Appellant has shown that "counsel's conduct, by action or omission, was of questionable legal soundness; that the conduct complained of had no reasonable basis designed to effectuate the client's interest; and that counsel's conduct had an adverse effect on the outcome of the proceedings." *Commonwealth v. Clark,* 551 Pa. 258, 710 A.2d 31, 35 (Pa.1998). If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met. *Travaglia, supra,* at 357.[9] With these standards in mind, we turn to consider the claims raised in this appeal which the court below did not address.

8. Appellant has not suggested that a different standard should apply to claims of ineffectiveness of counsel under Pa.R.Crim.P. 1504 than that applied to constitutional ineffectiveness claims.

9. We cannot evaluate the merits of those claims raised in the amended PCRA petition which present counsel has chosen not to brief in this appeal. *Commonwealth v. DeHart,* 539 Pa. 5, 650 A.2d 38, 43 (Pa. 1994).

Appellant argues that he was denied his right to meaningful appellate review due to the selective transcription of the voir dire proceedings and the absence of a transcript of defense testimony during one day of his trial, including that of his expert witness on the cause of the fire. He also argues that his counsel on direct appeal was ineffective in failing to secure a complete record of the proceedings. He maintains that he has no burden, in this appeal, to demonstrate how the gaps in the record have prejudiced him because it is enough that some claim may have been lost because appellate counsel did not review the entire record.

 This claim was not raised in the *pro se* and the amended PCRA petitions and is therefore waived. *See* 42 Pa.C.S. § 9544(b). Our decision to examine the ineffectiveness claims against Attorney Elgart does not defeat the waiver bar.

 Appellant makes a similar argument relating to the missing transcript of certain defense testimony. To ensure a defendant's right to meaningful appellate review, this court "require[s] that he or she be furnished a full transcript or other equivalent picture of the trial proceedings." *Commonwealth v. Shields*, 477 Pa. 105, 383 A.2d 844, 846 (Pa.1978). To be entitled to relief due to the incompleteness of the trial record the defendant must make some potentially meritorious challenge which cannot be adequately reviewed due to the deficiency in the transcript. *See id.* Here, unlike in *Shields, supra,* no such contention was raised post-trial or on appeal. Therefore, we must find that this failure constituted ineffective assistance of counsel if Appellant is to be entitled to relief on this ground.

 The missing portion of the transcript contained the testimony of several defense character witnesses and Paul Kaczmarcik, the defense's expert on the question of the cause of the fire. Appellant baldly asserts that there may have been some improper questions on cross-examination which the trial court failed to remedy. We find this assertion insufficient to raise a colorable question of whether due process was violated by the court's failure to provide Appellant with the transcript

of the particular day's testimony.[10] It is similarly insufficient to raise any inference of prejudice from trial and direct appeal counsel's failure to pursue this issue.

Appellant claims that prior counsel were ineffective for not litigating whether the investigative search of his residence, after the fire had been extinguished, violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Art. I, § 8 of the Pennsylvania Constitution. According to Appellant, he executed a blank consent form authorizing the entry of Commonwealth agents into his home, but this consent was limited to allowing them to fight the fire. He argues that once the exigency of a fire in progress was removed, the Commonwealth was required to obtain a search warrant or Appellant's continued consent.

We conclude that it was reasonable for counsel to forgo a suppression motion on this issue, and more importantly, that had he raised the issue, the outcome of this case would not likely have been different. There is no constitutional bar to a firefighter remaining on the scene of a fire after it has been extinguished and entering the building without a warrant

---

**10.** At another point in his brief to this court, Appellant alleges that defense character witnesses were impermissibly cross-examined regarding Appellant's 1962 conviction for assault. He bases this argument on the prosecutor's abortive attempt to cross-examine one such witness, Ronald Transue, who testified to Appellant's reputation as a peaceful, law-abiding citizen. When the prosecutor asked whether Transue had ever heard of Appellant having "prior contacts with the law", defense counsel objected. N.T., 8/4/80, at 123. In the course of a side-bar conference, the prosecutor stated that he would not let such testimony go unchallenged when he knew that Appellant had an assault conviction on his criminal record. Id. at 127. From this Appellant suggests that similar inquiry was made of each character witness whose testimony was not transcribed, and that, though it was excluded at that point, evidence of the 1962 conviction may have been successfully admitted at another point in the trial for which the transcript was lost.

Assuming that the conviction was made a subject of cross-examination and allowed by the trial court in the missing portion of the transcript, Appellant cannot show an entitlement to relief. Where the defense presents evidence of the defendant's reputation for peacefulness, the prosecution is permitted to test that testimony by inquiry into whether the witness is aware of convictions which tend to refute that reputation. *See Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (Pa.1981). Therefore this allegation of ineffectiveness lacks merit.

to determine the cause and origin of the fire. *See Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Commonwealth v. Smith*, 511 Pa. 36, 511 A.2d 796 (Pa.1986)(plurality). Moreover, any question as to whether the scope of the investigators' search exceeded the permissible bounds of this recognized exception to the warrant requirement is nullified by Appellant's execution of an additional consent to entry into his home on May 2, 1979, the day following the fire.[11] *See Brief for the Appellee*, Appendix A. Therefore, PCRA counsel's failure to pursue this issue affords Appellant no relief. *See Commonwealth v. Tilley*, 528 Pa. 125, 595 A.2d 575 (1991)(counsel cannot be ineffective for failing to assert a meritless claim).

Next, Appellant challenges the stewardship of prior counsel regarding the introduction of evidence that Appellant physically abused his wife and was unfaithful to her at various times during their marriage. The trial court permitted the prosecution to introduce evidence that, in the seven months prior to the fire, Carolyn Albrecht had been physically abused by Appellant and that Appellant was engaged in infidelity with a woman named Linda Bethman. Appellant contends that the prosecutor should not have been permitted to introduce evidence that Appellant beat his wife and engaged in an extramarital affair. Further, Appellant argues that the prosecutor committed misconduct by asking questions which implied that Appellant had been both unfaithful to his wife and had beaten her at times which were beyond the period for which the trial court had ruled such evidence admissible. This claim is presented in the context of PCRA counsel's ineffectiveness.

The admissibility of evidence that Appellant beat his wife was litigated on direct appeal to this court and cannot be raised again under the PCRA. 42 Pa.C.S. §§ 9543(a)(3),

---

**11.** Also, we are satisfied that the investigators' observations of the fire scene immediately following the fire and the statements of witnesses as to the appearance and progression of the fire provided ample cause to believe that the fire was arson. Considering the investigators' preliminary conclusions and the fact that three people perished in this suspicious fire, a search was clearly justified and the evidence gathered would inevitably have been discovered.

9544(a)(2). Additionally, evidence that Appellant was romantically involved with another woman at the time of his wife's death was relevant to establish motive. Therefore there is no merit to Appellant's claim regarding this latter evidence.

The trial court halted the prosecutor's cross-examination of Appellant concerning another affair with a woman in North Carolina and the court admonished the jury to completely disregard it as the prosecutor's question was not evidence. N.T., 8/5/80, at 126. Appellant has not shown that this improper inquiry by the prosecutor was so prejudicial that the trial court's corrective instruction was inadequate, nor that PCRA counsel was ineffective for failing to pursue a claim of appellate counsel's ineffectiveness on this basis.

Appellant's argument that trial counsel was ineffective for not objecting to cross-examination of Appellant as to whether he recalled or could explain why his wife appeared for work bruised in the early part of the 1970's and why she was treated for bruising in 1976 is similarly meritless. These questions were put to Appellant in response to his testimony that he had only hit his wife 4 or 5 times and only within a few months of the fire. See N.T., 8/5/80, at 59–63. Trial counsel did not object, nor could he have expected success if he did. The prosecutor's questions regarding prior instances of bruising on Carolyn Albrecht and the abortive attempt to examine Appellant regarding a marriage proposal to a woman in North Carolina tended to impeach Appellant's testimony that his marital difficulties were of recent origin. Previous counsel's failure in this regard does not warrant relief because it is an inconsequential matter in light of the scant prejudice emanating from this inquiry when viewed alongside the numerous properly admitted instances of more recent violence by Appellant toward his wife. Moreover, the evidence in question was not of such a nature that its admission would result in the denial of a fair trial. See *Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233, 1234 (Pa.1976). Therefore, Appellant has failed to demonstrate that this claim is of arguable merit, nor that he was prejudiced by the challenged omission.

Appellant argues that PCRA counsel was ineffective for not briefing trial counsel's ineffectiveness in failing to request a limiting instruction regarding the permissible use of evidence of Appellant's prior misconduct toward his wife. Appellant recognizes that this claim was previously litigated on direct appeal as a claim of ineffectiveness, but argues that appellate counsel's presentation of this issue was "paltry and ineffective—there can be no other reason for this Court's odd decision on appeal, a decision that stands in sharp conflict with this Court's precedents." [12] *Initial Brief of Appellant*, at 67.

As stated previously, to be eligible for PCRA relief, one must plead and prove that an issue has not been previously litigated. 42 Pa.C.S. § 9543(a)(3). An issue has been previously litigated where the highest appellate court in which review was available as of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2). It is evident from a reading of this court's opinion in Appellant's direct appeal that this issue was previously litigated within the meaning of the PCRA. Appellant's attempt to evade this requirement by claiming that appellate counsel must have been ineffective because he should have succeeded on this issue if properly presented is unavailing. The requirement that a claim for PCRA relief not be previously litigated would be rendered a nullity if this court could be compelled to revisit every issue decided on direct appeal upon the bald assertion that that decision was erroneous.

Appellant's next ineffectiveness claim concerns the failure of prior counsel to challenge the trial court's admonition to him not to consult with trial counsel during a brief recess upon the conclusion of Appellant's direct testimony and again upon calling a recess for lunch during his testimony on cross-examination. He argues that the court's instruction deprived

---

12. On direct appeal, this court stated:

Since the evidence concerning Appellant's prior misconduct toward his wife was held admissible, there could be no ineffectiveness in not asking for a point for charge concerning that misconduct.

*Commonwealth v. Albrecht, supra,* at 776.

him of his right to the assistance of counsel. *See Common-wealth v. Logan,* 456 Pa. 508, 325 A.2d 313 (Pa.1974).

This claim is not properly before us because Appellant did not raise it in his *pro se* or amended PCRA petitions. Appellant has not challenged the effectiveness of Attorney Shenkle in preparing the amended petition so this does not fit within the exception to waiver for claims of ineffectiveness. *See Commonwealth v. Seachrist,* 478 Pa. 621, 387 A.2d 661, 663 (Pa.1978).

Next, we consider Appellant's claim that his PCRA counsel (Elgart) was ineffective for failing to brief the issue of trial and appellate counsel's ineffectiveness for not challenging certain statements as inadmissible hearsay. The first statement challenged is the testimony of Carol Kuhns, a neighbor of the Albrechts, that Appellant's son appeared at her door the night before the fire and said that Appellant was hitting Carolyn Albrecht again and threatening to burn the house down. The Commonwealth contends that the statement was an excited utterance, which is an exception to the general bar to hearsay.

The admission of evidence is committed to the sound discretion of the trial court. *Commonwealth v. Cohen,* 529 Pa. 552, 605 A.2d 1212 (1992). Thus, this Court's standard of review is for an abuse of discretion. *Id.* "Discretion is abused when the course pursued [by the trial court] represents not merely an error of judgement, but where the judgement is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Co.,* 533. Pa. 441, 448, 625 A.2d 1181, 1185 (1993). *Commonwealth v. Smith,* 545 Pa. 487, 681 A.2d 1288, 1290 (Pa.1996).

To come within the excited utterance exception to the hearsay rule, a statement must be:

' " . . . a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occur-

rence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." *Allen v. Mack,* 345 Pa. 407, 410, 28 A.2d 783, 784 (1942).'

*See also Commonwealth v. Little,* 469 Pa. 83, 364 A.2d 915 (1976); *Commonwealth v. Cooley,* [465 Pa. 35, 348 A.2d 103 (1975) ]. Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

*Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858, 860–61 (Pa.1978).

■■■ We find merit in Appellant's contention that the argument here was not a sufficiently startling or shocking occurrence to render Appellant's son's reflective faculties "inoperable." Moreover, we find insufficient evidence that the challenged statements were made spontaneously or under such an overpowering influence of the events at the Albrecht home that one could reasonably conclude that they were spoken without opportunity for reflection. The facts indicate that violent arguments between the Albrechts were disturbingly frequent, and there is no indication that the police officer who responded to the son's call found evidence of any violent assault. Without downplaying the seriousness of an adolescent's exposure to such marital strife, we must observe that one who has seen his mother display wounds from having her face beaten and burned with cigarettes, and her hair torn from her head in tufts by his father would not be so traumatized by another altercation between his parents that he would be incapable of reflective thought for several minutes.

The son's actions after leaving the house also illustrate the merits of Appellant's contention. Assuming that the argument the son witnessed was sufficiently severe and unexpected to cause emotion to overpower reflective thought, we do not

think that this effect could reasonably continue until the time he entered the Kuhns' home. The facts indicate that the son went to another house first, the Doelps', and telephoned the police. There was no testimony as to his purpose in proceeding to the Kuhns' home. There is no indication that he requested immediate help of any sort. The Kuhns stated that he was nervous and shaken when he made the disputed statements. They also stated that, upon explaining the events at his house, the son declined an offer of overnight accommodation, indicating that he wanted to return home to see if the police could settle the situation. This latter response, following immediately the challenged statements, indicates that the son was exercising his reflective faculties to assess the situation. Such a fact is entirely inconsistent with the excited utterance exception. *See Commonwealth v. Little*, 469 Pa. 83, 364 A.2d 915 (Pa.1976). Therefore, there is merit to the underlying evidentiary claim.

Our review of the record reveals that Appellant was not prejudiced by any failure of counsel in this regard.

The crux of the Commonwealth's case was proof of arson rather than accident. The jury's acceptance that arson was the cause of the fire was crucial. The identity of the arsonist was a substantially lower hurdle, which could be readily inferred without any evidence that Appellant had threatened to burn the house. The prosecution did this through the pattern of violence and hostility Appellant exhibited toward his wife, his attempts to purchase a can of gasoline, the discovery of an empty can of gas in his car, and his appearance following the fire. The purported threats were numerous and the exclusion of one, even the one closest in time to the fire, was harmless beyond a reasonable doubt. Moreover, the threat at issue was either corroborated or refuted, depending on one's view, by Alfred Albrecht, Jr., the supposed declarant, who said that Appellant had threatened to burn Carolyn Albrecht's dress, not the house. This latter version was corroborated by Officer Heckenswiler of the Perkasie Police Department, who responded to the report of the disturbance at the Albrecht home during which Appellant uttered

the disputed threat. Therefore, there is considerable doubt as to whether the jury would have credited the recollection of the Kuhns, colored as it may have been by intervening events.

Next, Appellant challenges prior counsel's failure to pursue the issue of whether the testimony of Carolyn Albrecht's attorney in a Protection From Abuse proceeding and the testimony of her doctor was inadmissible hearsay. Carolyn Albrecht had confided in each man that Appellant was the source of injuries she had suffered. Trial counsel's effectiveness regarding these statements was litigated on direct appeal to this court and Appellant is not eligible for PCRA relief on this basis. See Albrecht, supra, at 776; 42 Pa.C.S. §§ 9543(a)(3), 9544(a)(2).

Appellant also challenges his counsel's failure to address the admissibility of testimony by two of Carolyn Albrecht's acquaintances. The acquaintances also testified as to the source of injuries to Carolyn Albrecht, which information was derived from conversations with Carolyn Albrecht. One witness testified that a bruise on her leg was from a kick. The other stated that Appellant "had banged her head against the refrigerator, and she said her head was numb so she didn't feel it when he burned her face with a cigarette." N.T. 7/31/80, at 166. These statements are merely cumulative of other evidence offered at trial, including photographs of the injuries described and Appellant's own admissions regarding abuse of his wife. Appellant has suffered no appreciable prejudice by the admission of these additional statements. Therefore, Appellant is entitled to no relief regardless of the merits of the underlying claims.

Next, Appellant claims that he was incompetent to testify due to organic brain damage caused by his alcoholism and a head injury suffered in the interim between the fire and Appellant's arrest. Appellant argues that trial counsel was ineffective for failing to investigate his competency and in providing poor advice regarding the risks of testifying in his own behalf.

■ These claims were not raised in the amended PCRA petition, and are therefore waived.[13] The waiver is not defeated by the allegation that Attorney Elgart was ineffective for not briefing the issues raised in the amended petition. Therefore, Appellant is not entitled to relief on this ground.

Appellant contends that trial counsel was ineffective for failing to investigate and present mitigating evidence at the penalty phase. This argument is also presented here for the first time and Appellant is therefore precluded from relief on this basis due to waiver.

Next, Appellant claims that the prosecutor's repeated instruction to the jury, to not factor sympathy into its decision, during his death penalty closing was improper and deprived him of a reliable sentencing hearing. This claim was not raised in Appellant's amended PCRA petition and, for the reasons stated previously, he is not eligible for relief on this basis.

Next, Appellant argues that a new sentencing hearing is mandated because trial counsel was ineffective in not objecting to the sentencing court's instructions that he maintains impermissibly required the jury to unanimously find any mitigating factor before giving it effect. *See Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

■ In *Mills, supra*, the U.S. Supreme Court reversed a death sentence because the instructions given the jury effectively permitted a lone juror to prevent a life sentence by requiring that any mitigating factor be unanimously found before it could be given any weight in the sentencing decision. This court has instructed that the Pennsylvania capital sentencing statute, 42 Pa.C.S. § 9711, does not require unanimity as to any particular mitigating factor before it can be given

13. PCRA counsel did assert that trial counsel "failed to determine whether the defendant's competency to assist in his own defense was affected by the heavy medication he was receiving during the trial, which affected the defendant's ability to recollect and testify accurately." *Defendant's Amended Petition for Post–Conviction Collateral Relief*, at ¶ BV. This particular argument is not developed in Appellant's brief to this court and is not sufficiently similar to the above contention to preclude a finding of waiver.

effect in the sentencing determination and therefore does not unduly restrict the jury's decision as proscribed on Eighth Amendment grounds in *Mills*. *Commonwealth v. Hackett*, 534 Pa. 210, 627 A.2d 719 (Pa.1993). The instruction given here substantially tracked the language of 42 Pa.C.S. § 9711(c)(1), and did not explicitly or implicitly require that each mitigating factor be unanimously agreed upon by the jury in order to be weighed against the aggravating circumstance found in this case. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995); *Commonwealth v. Murphy*, 540 Pa. 318, 657 A.2d 927 (Pa.1995).

The verdict slip in this case, which the trial court read into the record and explained, N.T. 8/8/80, at 80–82, also did not violate the principles expressed in *Mills*. The slip clearly required unanimity upon only the existence of the sole aggravating factor advanced by the prosecution, the determination that this aggravating factor outweighed any and all mitigating factors, and the sentence of death. The verdict slip does not express or imply a requirement that mitigating circumstances must be unanimously found to be considered and therefore did not violate the Eighth Amendment. *Commonwealth v. Frey*, 520 Pa. 338, 554 A.2d 27 (Pa.1989).

Finally, Appellant contends that the method by which Bucks County sheriff deputies summoned additional venirepersons for jury selection violated his right to a jury chosen from a fair cross-section of the community. As noted previously, this issue was thoroughly treated in this court's opinion on Appellant's direct appeal. *Albrecht, supra*, at 770–71. Appellant's previous litigation of this issue bars him from seeking relief on the same grounds in this PCRA action. 42 Pa.C.S. §§ 9543(a)(3), 9544(a)(2).

Having determined that Mr. Elgart's performance did not fall beneath the standard for legal ineffectiveness, we turn to consider those issues which he briefed that present counsel addresses in this appeal. We first consider the PCRA court's denial of Appellant's request for public funds to employ a fire science expert to review the evidence in this case. Appellant

contends that due process requires the provision of public funds to establish his claim that after-discovered evidence had undermined the reliability of his conviction. Generally, Appellant alleged that advances in fire investigation science, not widely known or available at the time of his trial, indicate that certain burn patterns once considered a tell-tale sign of a fire started by means of a liquid accelerant are equally consistent with the effects of a "flashover" fire of innocent origin.

The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion. *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 73 (1994). At the trial stage, "an accused is entitled to the assistance of experts necessary to prepare a defense." *Id. See Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). This court has never decided that such an appointment is required in a PCRA proceeding. We must review the PCRA court's exercise of its discretion in the context of the request, that an expert's testimony is necessary to establish his entitlement to relief under 42 Pa.C.S. § 9543(a)(2)(vi), the provision of the PCRA which deals with claims of innocence based on after-discovered evidence.

It is well settled in this Commonwealth that a new trial is not warranted on the basis of after-discovered evidence, unless it could not have been discovered until after the trial despite reasonable diligence, is not used for merely cumulative or impeachment purposes, and is of such a nature that it would compel a different outcome.

*Commonwealth v. Scott*, 503 Pa. 624, 470 A.2d 91, 93 (Pa.1983).

The PCRA court concluded, from a review of the trial transcripts, that both the defense and prosecution experts discussed the possible spread of the fire by means of a "flashover" in detail at trial. From this testimony, the PCRA court found that Appellant had failed to establish that the proffered evidence was after-discovered. The court also found that Appellant had failed to establish that the purported

scientific developments created a significant possibility that a jury would accept Appellant's insistence that the fire started accidentally. Accordingly the court denied the request for funds due to its speculative foundation.

Appellant contends that the PCRA court abused its discretion because "[t]he fact that the *concept* of flashover had been discussed at trial merely underscores the importance of the post-trial scientific discovery that evidence once thought to be consistent only with a flammable liquid fire is now *known* to be indicative of a flashover fire." *Initial Brief of Appellant*, at 35 (emphasis in original). Appellant argues that new scientific knowledge could establish that the fire may have been started by a smoldering cigarette in a living room chair, as he contended at trial, and spread to the kitchen by means of a flashover.

Here, Appellant presented no more than anecdotal support for his motion.[14] Nevertheless, we find Appellant's submissions sufficient to indicate that fire investigation science has made significant strides in the period subsequent to his trial. Appellant has not demonstrated, however, that an expert in the field existed who was willing to assist in developing this claim of innocence if funds became available. More importantly, Appellant has not established by factual analysis or argument that the trial court's denial of funds prejudiced him.

Generally, the flashover phenomenon, as explained by Appellant, occurs in compartment fires where the oxygen level in a certain room is too low to permit combustion. Flashover occurs when superheated gases fill a room, heating its contents to the point of ignition. When oxygen is supplied by the opening of a door or window, the superheated gases cause the

14. In support of this claim, he submitted the opinions of two Arizona post-conviction courts that awarded new trials to men convicted of killing family members by means of arson. *See Arizona v. Girdler*, No. 9809 (Super.Ct., Maricopa Cy., filed Jan. 3, 1991); *Arizona v. Knapp*, No. CR 78779 (Super.Ct., Maricopa Cy., filed Feb. 17, 1987), attached to *Defendant's Amended Petition for Post–Conviction Collateral Relief*, dated July 31, 1991. Appellant also attached newspaper articles relating to the above-cited decisions to his petition for post-conviction relief.

immediate ignition of objects which have not been directly exposed to flame.

Appellant testified that he exited the home through the kitchen, kicking the screen door open. That aluminum door remained open throughout the fire, melting in the intense heat. By Appellant's theory, the flashover should have occurred at the moment the door opened, and permitted oxygen to rush into the superheated room. The temperature at floor level must have been sufficient when the door opened to cause the extensive burning.[15] Appellant, however, was not burned in the fire. Similarly, there was no evidence that he had been exposed to any significant level of smoke or superheated gases, which must have been present in the kitchen during his exit if Appellant's theory is viable.

On the basis of the record presented in the PCRA court, Appellant has failed to establish that the court abused its discretion in denying his application for expert witness funds. Due process principles did not require the PCRA court to provide public funds for expert assistance because nothing submitted by Appellant established that the scientific knowledge could have been exploited under the facts of this case. *See Ake v. Oklahoma, supra.* Accordingly, we find no abuse of discretion in the trial court's order denying Appellant's request.

Appellant also argues that the PCRA court erred in denying his August 1995 request for a continuance to locate an expert willing to assist in developing his claim. Appellant was granted considerable time between the filing of his amended petition and the court's denial of relief in which to demonstrate that an expert existed who was willing to assist him in developing this claim. This matter was pending for nearly five years at the time of the request and was not resolved for several months thereafter. Appellant does not demonstrate that the denial of the continuance was the cause of his failure

15. Since heat invariably rises, the temperature above floor level must have equaled or exceeded that of the floor.

to secure a willing expert. The PCRA court did not abuse its discretion in denying Appellant's request for a continuance.

Next, we review the PCRA court's rejection of Appellant's challenge to the constitutionality of proportionality review as conducted in Pennsylvania and as applied in this case. Appellant argues that the proportionality review conducted by this court is infirm because litigants are afforded no access to the data upon which it is based and because that data, by virtue of underinclusiveness, is fundamentally flawed. Also, he provides a sampling of case summaries of first degree murder convictions in Pennsylvania in an effort to demonstrate that the sentence imposed in this case was, in fact, disproportionate.

This court has already fulfilled its statutory obligation to review Appellant's sentence for proportionality and ruled against him on this issue. This issue is now beyond the purview of the PCRA because it was previously litigated. 42 Pa.C.S. §§ 9543(a)(3), 9544(a)(2). Further, this court has recently rejected a challenge to the statistical and scientific integrity of the proportionality database compiled by the Administrative Office of Pennsylvania Courts. *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426, 437–41 (Pa.1997). Therefore, the PCRA court properly denied Appellant relief on this claim.[16]

Our final task is to address the claims raised by Appellant's present counsel which challenge the conduct of the PCRA court in disposing of the instant petition. Appellant maintains that the PCRA court abused its discretion when it denied his motion, in January 1996, to allow Attorney Elgart to withdraw

16. Appellant's claim that he was denied access to the data upon which this court's proportionality review was conducted on direct appeal is groundless. To contest the proportionality of his sentence on direct appeal Appellant should have addressed his request to the Administrative Office of Pennsylvania Courts, the caretaker of the database, prior to filing his brief to this court. Contrary to Appellant's assertions, the public enjoys free access to these records. *See Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656, 669 (Pa.1986). If Appellant requested this information in the brief he filed on direct appeal, as he contends, his request was misdirected. Appellant's failure to procure these public records was not a result of denial of access by this court.

as his appointed post-conviction counsel and appoint David Wycoff, an attorney from the Post Conviction Defender Organization. Appellant initially made this request on January 4, 1996, citing Mr. Elgart's dearth of experience in death penalty cases, which the court denied on January 12, 1996. He repeated this request in a motion for reconsideration, explaining that Mr. Elgart's representation was ineffective and that he had lost confidence in Mr. Elgart's ability to present his claim of innocence supported by new scientific evidence and that reappointment would streamline the disposition of the petition by avoiding the later litigation of Elgart's asserted ineffectiveness. This too the court denied, by an order dated the day following the court's order denying post-conviction relief. Attorney Elgart was appointed in January of 1994 and the trial court ordered him to brief the issues he wished to have decided in August 1995. At that time, the court was made aware of the Post Conviction Defender Organization's involvement through a request for a continuance to allow that organization time to secure the services of an expert to review Appellant's case. Appellant's motion was not filed until the court received Mr. Elgart's brief. It contained only a bare assertion of Mr. Elgart's ineffectiveness and an expression of Appellant's preference for a specific attorney over the most recent one appointed to represent him.

Appellant's request was addressed to the discretion of the PCRA court.[17] In an analogous case, we considered whether a court must permit an Appellant to terminate his attorney and proceed *pro se* after appellate briefs had been filed. *See Commonwealth v. Rogers*, 537 Pa. 581, 645 A.2d 223 (Pa.1994). In *Rogers, supra*, we held that a court has the discretion to require an appellant to remain with counsel after briefs have been filed rather than permit the disruption of the orderly disposition of the case. More importantly, the motion contained no specific factual allegations which, if true, would

17. The question presented here is entirely distinct from the one recently addressed by this court in *Commonwealth v. Grazier*, 713 A.2d 81 (Pa.1998), in that Appellant's argument does not implicate the constitutional right to self-representation.

have established Mr. Elgart's ineffectiveness. Therefore, the PCRA court was in a stronger position than the court in *Rogers*, which needed to weigh the movant's constitutional right to self-representation. Here, Appellant's letter essentially asserted that Appellant preferred to have another attorney, who was already involved in the case, appointed as his attorney of record. Clearly, the right to appointed counsel does not include the right to counsel of the defendant's choice. *Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (Pa. 1968). We find no abuse of discretion in the PCRA court's denial of this motion.

▮▮ Finally, Appellant argues that a remand is necessary because the PCRA court failed to provide adequate notice of its intent to dismiss his petition. Rule 1507(a) of the Pennsylvania Rules of Criminal Procedure requires that, where upon review of the petition and answer the PCRA court is convinced that no meritorious issues are presented and dismissal is appropriate without further proceedings, the court shall provide the defendant notice of its intention to dismiss and 10 days to respond with reasons why dismissal is inappropriate.[18] Here, the PCRA court did not summarily dismiss the petition upon initial review, but rather ordered the appointment of counsel, the filing of an amended petition, and the briefing of the legal issues presented. Therefore, Rule 1507(a), by its own terms, is inapplicable. Further, if applicable, Appellant can demonstrate no Rule 1507(a) violation because he was afforded both further proceedings and an opportunity to present arguments in support of the petition, which

**18.** Rule 1507 provides, in pertinent part:

(a) The judge shall promptly review the motion [for post-conviction relief], any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the motion and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 10 days of the date of the notice. The judge thereafter shall either order the motion dismissed, or grant leave to file an amended motion, or direct that the proceedings continue.

is all the rule requires. *Commonwealth v. Banks,* 540 Pa. 143, 656 A.2d 467, 473–74 (Pa.1995).

Accordingly, we affirm the PCRA court's denial of PCRA relief.[19]

Justice NIGRO files a concurring opinion joined by Justice CASTILLE.

NIGRO, Justice, concurring.

While I join the Majority's opinion in all other respects, I write separately to note my disagreement with the Majority's conclusion that the statements made by Appellant's son, Alfred Albrecht, Jr., to Carol and Terry Kuhns, the Albrechts' neighbors, were not excited utterances.

At Appellant's trial, Mr. and Mrs. Kuhns testified that on the night before the fire, Alfred Jr., nervous and shaken, came to their house and told them that Appellant was hitting his mother again and threatening to burn the house down. N.T. at 105, 210. In determining that these statements do not qualify as excited utterances, the Majority essentially finds, in the first instance, that the violent argument between the Albrechts was not a sufficiently startling occurrence to render Alfred Jr.'s reflective faculties inoperable at the time he made the declarations to the Kuhns. *See Commonwealth v. Pronko-skie,* 477 Pa. 132, 383 A.2d 858 (1978) (to come within excited utterance exception to hearsay rule, statement must be spontaneous declaration by person whose mind has suddenly been made subject to an overpowering emotion caused by some shocking occurrence, which is made so near the occurrence as to exclude the likelihood of it having emanated from declarant's reflective faculties). I disagree. The Majority suggests that since Alfred Jr. had been subjected to numerous violent arguments between his parents in the past, experiencing one more altercation would not sufficiently traumatize him so as to

19. The prothonotary of the Supreme Court of Pennsylvania is directed to transmit, within ninety days, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this court to the Governor and to the Secretary of Corrections, pursuant to 42 Pa.C.S. § 9711(i).

render him incapable of reflective thought. Regardless of how many times a child is forced to witness violent arguments between his parents, however, I cannot agree with the Majority that repetition somehow numbs the traumatizing effects such abuse has on a child. Rather, I believe that a child witnessing the physical abuse of his mother can clearly be considered a shocking event for purposes of the excited utterance exception to the hearsay rule. *See Commonwealth v. McIntosh*, 258 Pa.Super. 101, 106, 392 A.2d 704, 706 (1978) (for purposes of excited utterance exception, a child witnessing his mother's boyfriend strike his sibling is startling occurrence).

Furthermore, the fact that the statements were made to the Kuhns after Alfred Jr. had already sought help at another neighbors' house does not, in my view, obviate the fact that Alfred Jr. was still suffering from emotional shock at the time he made the statements to the Kuhns. *See Commonwealth v. Zukauskas*, 501 Pa. 500, 504, 462 A.2d 236, 238 (1983) (since the question is not how long one or when one is seized by an event, but rather whether he was seized at all, time itself is not dispositive of whether statement is excited utterance). The Kuhns testified that Alfred Jr. was nervous and shaken when he rang the doorbell to their home for help and told them that his father was hitting his mother again and threatening to burn down his house. N.T. at 105, 210. *See Commonwealth v. Watson*, 426 Pa.Super. 496, 503, 627 A.2d 785, 788 (1993) (despite uncertainty about how much time had elapsed between shocking occurrence and utterance, testimony that child was crying and nervous at time he made statement made it clear that child was still suffering from emotional shock of incident at that time). Likewise, I do not believe that the additional fact that Alfred Jr. declined the Kuhns' invitation to stay overnight after making the challenged statements establishes that the statements were not, under the circumstances of this case, excited utterances. Unlike the Majority, then, I have no difficulty finding that Alfred Jr.'s statements to the Kuhns were declarations made while experiencing overpowering emotion caused by a shocking event and there-

fore, properly admissible pursuant to the excited utterance exception to the hearsay rule.

Accordingly, I disagree with the Majority that Appellant's claim that counsel was ineffective for failing to object to Alfred Jr.'s statements as inadmissible hearsay has arguable merit. I would find that Appellant's claim fails on this ground. *See Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991) (counsel's assistance is deemed constitutionally effective once it is determined that underlying claim is not of arguable merit). However, since the Majority ultimately rejects Appellant's claim on the basis that he was not prejudiced by trial counsel's failure to object to these statements, I agree with the result reached by the Majority on this issue.

Justice CASTILLE joins in the Concurring Opinion.