J-S30013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONATO RODRIGUEZ | |
| Appellant | No. 3291 EDA 2008 |

Appeal from the Judgment of Sentence October 28, 2008
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0912651-2003

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED APRIL 06, 2016**

Appellant, Donato Rodriguez, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial conviction for criminal conspiracy.[1]  We affirm.

The trial court set forth the relevant facts of this case as follows:

> Appellant's arrest stems from his involvement in the sale of 50 grams of [h]eroin to an undercover narcotics officer on September 25, 2003 in the city and county of Philadelphia.  The investigation began on September 18, 2003 when narcotics officer Luis Melendez…received information from a confidential informant that a man named "Alex" was selling [h]eroin [on] the 500 block of Indiana Street.  The officer went to the location, met with a Dominican male calling himself Alex, (later identified as Luis Garvais) and agreed to purchase a bundle containing 13 packets of [h]eroin for $100[.00].  [Mr.] Garvais told

_____

[1] 18 Pa.C.S.A. § 903(a)(1).

Officer Melendez to drive his car around the corner, where he met him again, then walked out of sight back around the corner and returned with the [h]eroin. Using marked bills, or "buy money," the plain clothes officer exchanged cash for narcotics then arranged a future buy at the "Lucky 7" Bar. The contraband was placed on property receipt 2479314.

On September 23, [2003,] Officer Melendez again met with [Mr.] Garvais on the corner of Rohr and Indiana [S]treets outside of the Lucky 7 Bar, where the officer arranged to buy 10 bundles (130 packets) of [h]eroin from him for $800[.00]. After speaking to a male on a bicycle (later identified as Miguel Francisco), [Mr.] Garvais directed [Officer] Melendez to walk across the street to the bar and wait for him. There, the two talked about a bulk purchase of 50 grams for the price of $4000[.00], and as they negotiated the deal a mini-van pulled up next to them. [Mr.] Garvais exchanged the $800[.00] in buy money to an unidentified male in the van for narcotics, which he passed along to the officer. [Officer] Melendez arranged to meet again on the 25th, and left the area to meet with uniformed officers at an undisclosed location where he placed the narcotics on property receipt 2479316.

At approximately 4:45 p.m. on September 25[, 2003,] Officer Melendez called [Mr.] Garvais to make arrangements for the buy, and was told to drive to the 500 block of Indiana Street, where they met and he was again directed to the Lucky 7 Bar. There, they renegotiated the terms of the deal, and [Mr.] Garvais asked [the] officer to drive him around so he could make a phone call. Inside the unmarked police car, [Mr.] Garvais used the officer's cell phone to call "his man," an unidentified male whose number the officer stored in his phone. [Mr.] Garvais relayed the terms of the deal to "his man" then told [Officer] Melendez everything was ok and he would call him back in fifteen minutes. The officer wrote his cell number on a piece of scrap paper and gave it to [Mr.] Garvais before dropping him off a few blocks from the Luck[y] 7 bar.

[Officer] Melendez called his backup and informed them of the situation. After fifteen to twenty minutes of waiting,

[Mr.] Garvais called the officer back and told him to go back to the Lucky 7. The officer returned to [the] bar where [Mr.] Garvais introduced him to Appellant, who was skeptical of [Officer] Melendez and immediately began interrogating him in front of [Mr.] Garvais. Appellant asked the officer how long had he known "Alex" ([Mr.] Garvais), how [the officer] planned to cut the heroin, how he would break the heroin down and where would he sell it. Officer Melendez, a certified expert on narcotics transactions, answered all of Appellant's questions, then turned to [Mr.] Garvais and asked him what was wrong with Appellant. The officer then deftly accused Appellant of being a cop, and feigned concern that he was being set up to be robbed by both men because he was holding roughly $4000[.00].

[Mr.] Garvais vouched for [Officer] Melendez in front of Appellant, and told him that [Officer] Melendez could be trusted, assuaging Appellant's concerns. [Mr.] Garvais and Appellant then laughed and [Mr.] Garvais told [Officer] Melendez that Appellant was "his man" and asked the officer if he wanted to play pool. Appellant said something to Miguel Francisco (the male on the bicycle) and [Mr.] Francisco promptly left the bar.

Concerned that [Mr.] Francisco might act as a look-out, [Officer] Melendez told Appellant and [Mr.] Garvais he had to use the bathroom, and went to warn his back-up officers. When he returned to the pool table, [Officer] Melendez again voiced concern to [Mr.] Garvais about being ripped off. Appellant responded that his product was pure and that he would personally guarantee it.

With roughly one hour passing while the three men were in the bar, [Mr.] Garvais eventually exchanged 50 grams of [h]eroin with Officer Melendez for $4000[.00]. The officer left the bar and called back-up to converge on the bar and arrest everyone. The narcotics were placed on a property receipt.

Inside the bar, officers arrested Appellant, [Mr.] Garvais, the bartender, and two older males in the bar. [Mr.] Garvais, upon seeing the officers enter the bar, threw a wad of the buy money onto the floor of the bar. He and

Appellant were placed into custody and searched upon arrest, and the money was recovered from the floor. Arresting officers recovered from Appellant $602[.00] in unmarked currency and a blue cell phone, and from [Mr.] Garvais they recovered $500[.00] in marked bills, $230[.00] in unmarked currency, and the scrap of paper that Officer Melendez had written his cell phone number [on]. The remaining $3500[.00] in marked currency was in the discarded wad recovered from the floor.

When the arresting officers described the items recovered on [Mr.] Garvais and Appellant, Officer Melendez dialed the saved number that [Mr.] Garvais had previously dialed into [the officer's] phone and used to set up the deal two days prior. The arresting officer answered from Appellant's blue cell phone. All of the recovered cash, narcotics, and Appellant's cell phone were placed on property receipts.

(Trial Court Opinion, filed September 9, 2011, at 2-5).

Procedurally, on January 31, 2008, a jury convicted Appellant of one (1) count of criminal conspiracy. On September 11, 2008, the court sentenced Appellant to a term of four (4) years' probation. Appellant filed a post-sentence motion, which the court granted on October 28, 2008, resentencing Appellant to a term of two (2) years' probation.[2] Appellant filed a timely notice of appeal on November 21, 2008. On April 3, 2009, the prothonotary of this Court filed and sent a letter to the trial court regarding

_____

[2] The docket does not indicate when Appellant's post-sentence motion was filed, and no written motion is included in the certified record. Nevertheless, the court's October 28, 2008 order explicitly stated: "reconsideration of sentence granted." The court also indicated in its Pa.R.A.P. 1925(a) opinion that it resentenced Appellant upon granting his motion for reconsideration of sentence.

the delinquency of the certified record. In its opinion, the trial court provided the following explanation for the delinquent record:

> Shortly after the trial concluded and the [c]ourt ordered [n]otes of [t]estimony, the reporter assigned to the trial resigned from the First Judicial District and moved to Colorado without leaving a forwarding address. There were no digital reproductions made and the physical notes themselves were rendered unreadable due either to the deterioration of the ink used, or improper use of the lettering machine which left the paper sheets themselves illegible.
>
> Subsequent attempts to contact the reporter failed, unfortunately, and the reporter died before any successful attempt to have her re-create the notes could be attempted.

(Trial Court Opinion at 1-2). In lieu of the trial transcript, on March 16, 2011, the court ordered Appellant to file within fourteen days a proposed statement in absence of transcript pursuant to Pa.R.A.P. 1923, and a proposed statement of record per Pa.R.A.P. 1924. The orders also (1) directed trial counsel to assist appellate counsel in preparing the statements, if necessary; and (2) directed the Commonwealth to file any objections and/or proposed amendments within ten days of receiving Appellant's proposed statements. On March 25, 2011, trial counsel filed and sent a letter to the court indicating he could not accurately recall the facts of Appellant's case because of the length of time that had passed since the trial. Counsel also stated Appellant was unavailable for an interview because he had recently been sentenced to federal prison on new charges of distribution of a controlled substance. Appellant did not file a Rule 1923 or

Rule 1924 statement. On September 9, 2011, the trial court issued its opinion, in which it relied on its own notes to recreate the factual record and address the issues raised in Appellant's post-trial motions.[3]

Appellant raises the following issue on appeal:

> IS APPELLANT ENTITLED TO A NEW TRIAL BECAUSE HE CANNOT EFFECTIVELY AND MEANINGFULLY EXERCISE HIS RIGHT TO AN APPEAL WHERE THE NOTES OF TESTIMONY ARE UNAVAILABLE AND AN EQUIVALENT PICTURE OF WHAT TRANSPIRED AT TRIAL CANNOT BE RECREATED BY NEWLY APPOINTED COUNSEL[?]

(Appellant's Brief at 7).

Appellant argues he cannot properly exercise his right to an appeal because the notes of testimony from trial are unavailable, and he is unable to create an equivalent account of the proceedings. Appellant asserts the court reporter's physical notes of testimony were illegible, and no digital reproductions were produced. Appellant avers the reporter resigned shortly after the trial, moved to Colorado without leaving a forwarding address, and died before any contact could be made to recreate her notes. Appellant contends any attempt to retrieve notes from the trial court judge would be futile because the judge retired in 2012 and was subsequently convicted of criminal charges. Appellant claims his effort to retrieve notes from trial counsel was fruitless because counsel had little to no memory of the case.

_____

[3] The court's opinion indicates Appellant raised the following issues in post-trial motions: (1) sufficiency of the evidence; (2) weight of the evidence; and (3) improper jury instructions.

Appellant submits he complied with Rule 1923 because he tried to recreate an equivalent picture of the trial proceedings but was unable to do so under the circumstances. Appellant concludes this Court should grant him a new trial. We disagree.

"In order to assure that a defendant's right to appeal will not be an empty, illusory right, we require that he…be furnished a full transcript or other equivalent picture of the trial proceedings." ***Commonwealth v. Shields***, 477 Pa. 105, 108, 383 A.2d 844, 846 (1978). "The burden of obtaining transcripts from the proceedings falls squarely on the appellant." ***Commonwealth v. Harvey***, 32 A.3d 717, 721 (Pa.Super. 2011), *appeal denied*, 614 Pa. 701, 37 A.3d 1194 (citing Pa.R.A.P. 1911(a)). Pennsylvania Rule of Appellate Procedure 1923 governs the situation in which a trial transcript is unavailable:

> **Rule 1923. Statement in Absence of Transcript**
>
> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal.

Pa.R.A.P. 1923. "The theory that underlies Rule 1923 is that a verbatim transcript of proceedings is not necessarily a condition precedent to

meaningful appellate review, so long as the appellate court has an 'equivalent picture' of what happened at trial." **Harvey, supra** at 721.

> [A]ppellate counsel is required to prepare a statement of the missing evidence from the best available means. … [T]he information necessary to prepare a statement in absence of transcript can come from any of the parties who were present, including the trial judge, witnesses, the trial prosecutor, defendant's trial attorney, and defendant.

*Id.* at 722.

Pennsylvania Rule of Appellate Procedure 1924 provides as follows:

### Rule 1924. Agreed Statement of Record

In lieu of the record on appeal as defined in Rule 1921 (composition of record on appeal), the parties may prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the lower court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. If the statement conforms to the truth, it, together with such additions as the lower court may consider necessary fully to present the issues raised by the appeal, shall be approved by the lower court and shall then be certified to the appellate court as the record on appeal and transmitted thereto by the clerk of the lower court within the time prescribed by Rule 1931 (transmission of the record). Copies of the agreed statement and the order from which the appeal is taken may be filed as the reproduced record.

Pa.R.A.P. 1924.

A new trial may be granted if the unavailability of a trial transcript makes meaningful appellate review impossible **and** the defendant is free from fault. **Commonwealth v. Burrows**, 550 A.2d 787, 788 (Pa.Super. 1988), *appeal denied*, 522 Pa. 617, 563 A.2d 886 (1989). Further, "To be

entitled to relief due to the incompleteness of the trial record[,] the defendant must make some potentially meritorious challenge which cannot be adequately reviewed due to the deficiency in the transcript." *Commonwealth v. Albrecht*, 554 Pa. 31, 47, 720 A.2d 693, 701 (1998).

Instantly, a jury convicted Appellant of criminal conspiracy on January 31, 2008. The court sentenced Appellant on September 11, 2008, and modified and reduced the sentence on October 28, 2008. Appellant filed his notice of appeal on November 21, 2008, and requested transcripts; but no trial transcripts were included in the certified record because the court reporter's notes of testimony were illegible, and she had moved out of state and died before anyone was able to contact her. On April 3, 2009, the prothonotary of this Court filed and sent to the trial court a letter indicating the record was delinquent. For the next two years, Appellant made no attempt to recreate the record of the trial proceedings by other means. On March 16, 2011, the trial court ordered Appellant to file statements pursuant to Pa.R.A.P. 1923 and Pa.R.A.P. 1924. In response to the court's orders, trial counsel stated his memory of the case had faded; and he was unable to recall any details other than the verdict and date of sentencing. Appellant, however, had over two years since filing a notice of appeal to enlist the help of trial counsel to recreate the missing parts of the record. Appellant bears responsibility for his lengthy delay in seeking trial counsel's assistance.

Further, Appellant had other potential sources of information he could

have relied on to prepare a Rule 1923 or Rule 1924 statement, including the trial judge, prosecutor, witnesses, and Appellant's own recollection of the trial. Nevertheless, Appellant made no effort to use those resources. For instance, without explanation, Appellant dismisses the district attorney's office as a source of any accurate information of what occurred at trial. Appellant failed to satisfy his duty to create a statement in absence of transcript from the best available means, including his own recollection. *See* Pa.R.A.P. 1923; ***Harvey, supra***. Likewise, Appellant failed to prepare a proposed statement of record under Pa.R.A.P. 1924. Thus, to the extent the certified record is deficient due to missing notes of testimony, Appellant is not free from fault. ***See Burrows, supra***. Additionally, the trial court's opinion included a detailed factual history derived from its notes at trial, and Appellant makes no objection to its accuracy.

Moreover, Appellant's brief addresses only the issue of the missing trial transcript. Appellant raises no claim of error with respect to the proceedings or outcome of the trial. Therefore, Appellant also fails to meet the requirement that he raise a potentially meritorious challenge that cannot be adequately reviewed due to the deficiency of the record. ***See Albrecht, supra***. Based on the foregoing, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/6/2016</u>