J-S20034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LEONARD L. ECHOLS | : | |
| | : | |
| Appellant | : | No. 2644 EDA 2015 |

Appeal from the PCRA Order July 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0907531-2005

BEFORE:   BOWES, J., OTT, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED MAY 16, 2017**

Leonard L. Echols appeals from the order entered July 17, 2015, in the Court of Common Pleas of Philadelphia County that dismissed, without a hearing, his first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA),[1] seeking relief from the judgment of sentence of life imprisonment.  Echols raises four claims, specifically, (1) appellate counsel ineffectively argued Echols' direct appeal suppression claim, (2) trial counsel was ineffective because he did not impeach the testimony of Nicole Thompson with materials he had readily at hand, (3) trial counsel was ineffective because he failed to object to the court's charge which did not inform the jury that the Commonwealth bore the burden of proving the

_____

[1] 42 Pa.C.S. §§ 9541–9546.

voluntariness of Echols' statement to Detective Pirrone by a preponderance of the evidence, and (4) trial counsel was ineffective because he did not object to the court's charge regarding prior bad acts. *See* Echols' Brief at 7–8. Based upon the following, we affirm.

This Court previously summarized the underlying facts and procedural history of this case in Echols' direct appeal:

> Sometime between 1:00 p.m. and 2:00 p.m. on March 23, 2005, Nicole Thompson (hereinafter "Nicole"), Bobby McKenzie (hereinafter "Bobby"), and George Paramour (hereinafter "George") were in George's living room located at 5621 Sprague Street in Philadelphia, Pennsylvania; Bobby was speaking with George and Nicole was asleep in an arm chair. George got up to answer a knock at the front door and a man, later identified as Irving Perkins (hereinafter "Irving") followed him into the living room. Irving got into an argument with George, drew a gun, pointed it at George, and ordered him to give up his money. George responded that he was "not going to give … [Irving] nothing." Irving repeated his demand and added that he would shoot George if he didn't comply. Bobby advised George to just "give him the money" and Irving repeated the demand for money yet a third time.
>
> George refused the demand and immediately thereafter, Bobby rushed Irving, threw him against the wall, and knocked the gun from his hand. At that point, [Echols] entered the room and grabbed Bobby by the neck from behind as George and Irving fought for control of the gun. Bobby flipped [Echols] off of him and ran toward the kitchen. Once in the kitchen, Bobby heard two gunshots. Awakened by the argument, Nicole saw Irving point a gun at George, [Echols] enter the living room from the hallway leading to the front door, and the subsequent fight over the gun. She got up and ducked into the adjoining dining room before she heard a gunshot. Nicole turned, looked back into the living room, and saw Irving, with the gun in his hand, and [Echols] standing over

- 2 -

George's body on the living room floor. As George lay on the floor she heard [Echols] tell Irving that he should have "just come in and … shot him [George]." [Echols] and Irving went through George's pockets and took money, some loose bags of heroin, and an empty pill bottle that George used to store heroin. Thereafter, [Echols] and Irving went to the front door but were unable to open it. Nicole told them that she would let them out; she went to the door, opened it, and closed it after them. Nicole ran upstairs and told … Lisa Thompson (hereinafter "Lisa") that George had been shot. Lisa called 911 and the police arrived shortly thereafter. Nicole was interviewed by the police and identified [Echols] as a participant in the shooting. Nicole testified that she saw [Echols] in George's house a week before the shooting. On that occasion, [Echols] threatened George with a large knife and demanded that he be allowed to buy a bag of heroin on credit. A second man identified as Ray-Ray told [Echols] to calm down and offered to buy him a bag of heroin. Nicole retrieved a bag of heroin and gave it to [Echols] and he left.

The police responded to a report of a shooting at 5621 Sprague Street on March 23, 2005. George was transported to Albert Einstein Medical Center where he was pronounced dead. The medical examiner testified that George died as a result of the gunshot wound to the chest and that the manner of death was homicide. Stippling around the entrance wound indicated that the muzzle of the gun was pressed against George's chest when it was fired. The bullet passed through George's liver and damaged the inferior venacava and the abdominal aorta blood vessels.

Trial Court Opinion, 12/14/07, at 2-4 (citations omitted); Certified Record (C.R.) at 9.

On June 8, 2005, [Echols] was arrested and charged with criminal homicide, robbery, criminal conspiracy, and possessing an instrument of crime. [Echols] was subsequently transported to the Homicide Unit of the Philadelphia Police Department for questioning and was not handcuffed at this time. Prior to commencing the interview, Detective George Pirrone verbally administered ***Miranda*** warnings to [Echols]. N.T. Jury Trial,

- 3 -

8/3/07, at 37-40. Detective Pirrone also testified that during the course of this interview, [Echols] acknowledged that he was at the victim's residence buying drugs the day of the shooting and "took a pill bottle from [the victim] after he was shot." *Id.* at 40-42. On July 25, 2007, [Echols] filed a motion to suppress his statement alleging, *inter alia*, that it was obtained in the absence of a knowing, intelligent, and voluntary waiver of his *Miranda* rights. A hearing was held on the motion on July 31, 2007. Following the hearing, the trial court denied the motion. [Echols] proceeded to a jury trial on August 6, 2007 and was ultimately found guilty of second degree murder, robbery, and criminal conspiracy. As noted, [Echols] was sentenced to an aggregate term of life imprisonment on September 14, 2007. [Echols] did not file any post-trial motions. On September 19, 2007, [Echols] filed a timely notice of appeal, and the trial court ordered him to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). [Echols] failed to file a concise statement and the trial court issued an opinion on December 14, 2007 finding all of [Echols'] claims waived. *See* Trial Court Opinion, 12/14/07; C.R. at 9.

Thereafter, on March 5, 2008, [Echols] filed a "Petition for Remand for Submission of Statement Pursuant to Pa.App.R. [sic] 1925(b) *Nunc Pro Tunc*." *See* C.R. at 14. On April 15, 2008, this Court remanded the matter to the trial court and directed [Echols] and the trial court to comply with Pa.R.A.P. 1925. On May 13, 2008, [Echols] filed a 1925(b) statement. Thereafter, on June 27, 2008, the trial court filed a supplemental opinion.

*Commonwealth v. Echols*, 974 A.2d 1180 [2337 EDA 2007] (Pa. Super. 2009) (unpublished memorandum).[2] On March 31, 2009, this Court affirmed the judgment of sentence. *Id.* On November 30, 2009, the

---

[2] In his direct appeal, Echols raised five issues: (1) the verdict was against the weight of the evidence, (2) the trial court erred in denying the motion to suppress, (3) the trial court erred in admitting a prior bad act of Echols, (4) the trial court erred in denying the motion for mistrial, and (5) the trial court erred in denying trial counsel's request for a "Failure to Call a Potential Witness" charge. *See Commonwealth v. Echols*, 974 A.2d 1180 [2337 EDA 2007, at 5] (Pa. Super. 2009) (unpublished memorandum).

Pennsylvania Supreme Court denied allowance of appeal. ***Commonwealth v. Echols***, 985 A.2d 218 (Pa. 2009).

On March 22, 2010, Echols filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition. Present PCRA counsel entered his appearance on June 5, 2012, and filed an amended petition on February 7, 2013, and a supplemental amended petition on June 25, 2014.[3] On July 17, 2015, the PCRA court, after issuing Rule 907 notice, dismissed Echols' petition without a hearing. This appeal followed.[4, 5]

At the outset we state the principles that guide our review:

> Under the applicable standard of review, we determine whether the ruling of the PCRA court is supported by the record and is free of legal error. ***Commonwealth v. Spotz***, 616 Pa. 164, 47 A.3d 63, 75 (Pa. 2012) (citing ***Commonwealth v. Hutchinson***, 611 Pa. 280, 25 A.3d 277, 284-85 (Pa. 2011)). We apply a *de novo* standard of review to the PCRA courts legal conclusions. ***Id.***
>
> ****
>
> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied "'that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.'" ***Commonwealth v. Roney***, 622 Pa. 1, 79 A.3d 595, 604 (Pa. 2013) (quoting ***Commonwealth v. Paddy***, 609 Pa. 272, 15 A.3d 431, 442 (Pa.

---

[3] Echols, in his brief, states "Extensions to file this Petition were granted by the Court because of counsel's illness." Echols' Brief at 5.

[4] The PCRA court did not order Echols to file a Pa.R.A.P. 1925(b) statement.

[5] The trial court record was received in this Court on May 25, 2016.

2011), quoting Pa.R.Crim.P. 909(B)(2)). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Roney***, 79 A.3d at 604-05.

***Commonwealth v. Blakeney***, 108 A.3d 739, 748-750 (Pa. 2014), *cert. denied*, 135 S. Ct. 2817 (2015).

> To obtain relief on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This Court has applied the ***Strickland*** test by looking to the following three elements that must be satisfied: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his actions or failure to act; and (3) the PCRA petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975 (Pa. 1987). Counsel is presumed to have rendered effective assistance of counsel. ***Commonwealth v. Montalvo***, 604 Pa. 386, 986 A.2d 84, 102 (Pa. 2009). Further, we are not required to analyze the elements of an ineffectiveness claim in any particular order; if a claim fails under any requisite prong, the Court may address that prong first. ***Commonwealth v. Albrecht***, 554 Pa. 31, 720 A.2d 693, 701 (Pa. 1998). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. ***Commonwealth v. Jones***, 590 Pa. 202, 912 A.2d 268, 278 (Pa. 2006).

***Commonwealth v. Staton***, 120 A.3d 277, 283-84 (Pa. 2015), *cert. denied*, 136 S. Ct. 807 (2016).

> To establish ***Strickland/Pierce*** prejudice in the appellate representation context, the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance.

*Blakeney, supra*, 108 A.3d at 750. *See also Commonwealth v. Koehler,* 36 A.3d 121, 142 (Pa. 2012) ("To succeed on a stand-alone claim of appellate counsel's ineffectiveness, a PCRA petitioner must demonstrate that appellate counsel was ineffective in the manner by which he litigated the claim on appeal.").

Echols first argues that "direct appellate counsel ineffectively argued [Echols' direct] appeal claim that [Echols] was questioned without a knowing, intelligent and explicit waiver of his *Miranda* rights because the nodding of his head was far too vague to support such waiver and was not an explicit waiver thereof." Echols' Brief at 11. Echols claims that appellate counsel ineffectively challenged the trial court's denial of his suppression motion by only arguing that Echols' statement was coerced by police, and "never clearly presented the issue of whether a waiver could be found from the nodding of [Echols'] head." Echols' Brief at 8.

Echols contends that appellate counsel should have cited the "on point" decisions of *Commonwealth v. Hughes*, 639 A.2d 763 (Pa. 1994) and *Commonwealth v. Bussey*, 404 A.2d 1309 (Pa. 1979) (plurality opinion). Echols' Brief at 17. Echols relies on *Bussey's* holding that "pursuant to our supervisory powers and interpretation of the Pennsylvania Constitution, we hold an explicit waiver is a mandatory requirement." Echols' Brief at 17, *citing Bussey*, 404 A.2d at 1314. Echols further argues that in *Hughes*, the Pennsylvania Supreme Court "applied *Bussey's* explicit

waiver requirement without acknowledging it was a plurality opinion, and thereby gave it precedential status." Echols' Brief at 17. Based on these decisions, Echols maintains appellate counsel was ineffective for failing to present any argument that there was no explicit waiver of Miranda rights by "an ambiguous nod of the head." Echols' Brief at 20. We disagree.

In *Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003), *cert. denied*, 540 U.S. 1115 (2004), the Pennsylvania Supreme Court noted its prior decisions in *Bussey* and *Hughes*. The *Bomar* Court pointed out *Bussey* was not a majority opinion and, therefore, did not constitute binding precedent. *Bomar*, 826 A.2d at 834 n.13. The *Bomar Court* held:

> An explicit statement of waiver after being advised of [one's] *Miranda* rights ... is not necessary to a finding of waiver under the Fifth Amendment. The pertinent question is whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. Waiver can be clearly inferred from the actions and words of the person interrogated.

*Id.* at 843 (citations and quotations marks omitted).

In this case, the trial court, in denying the suppression motion, found that Detective Pirrone "read *Miranda* warnings to [Echols]. In response to the warnings, [Echols] slid back into his chair and nodded his head several times." Trial Court Opinion, 7/11/2008, at 6. The trial court stated, "The absence of an explicit oral waiver does not render the waiver unknowing or involuntary; the waiver can be inferred from the defendant's actions." *Id.*, *citing Bomar*, 826 A.2d at 843.

On appeal, this Court agreed with the trial court "that '[Appellant] was given *Miranda* warnings, he understood the warnings … [and] voluntarily waived his rights prior to making an oral statement to police." *Echols, supra*, 974 A.2d 1180 [2337 EDA 2007, at 9]. In this regard, this Court stated, "The record further reveals Detective Pirrone verbally administered *Miranda* warnings to [Echols], and [Echols] acknowledged that he understood his rights by nodding repeatedly." *Id.,* 974 A.2d 1180 [2337 EDA 2007, at 10].

Based on our review of the record and case law, we conclude that in light of the holding in *Bomar*, appellate counsel would not have succeeded on appeal with the argument Echols currently proffers. As such, Echols has failed to satisfy his burden of establishing a reasonable probability that the outcome of his direct appeal would have been different. *See Blakeney, supra*, 108 A.3d at 750. Accordingly, no relief is due on Echols' first claim, regarding appellate counsel's ineffectiveness.

In his second issue, Echols claims trial counsel was ineffective because he did not impeach the testimony of Nicole Thompson with materials he had readily at hand. Echols argues trial counsel did not cross-examine Ms. Thompson about her *crimen falsi* conviction for receiving stolen goods, her multiple aliases, and her probationary status, which "could easily have caused the jury to disbelieve her, or at least find a reasonable doubt in her testimony." Echols' Brief at 32. Echols maintains that "[b]ecause Thompson

was the only witness to link him to the crime it was imperative that his attorney impeach her to the limit of the law." *Id.* at 32.

The PCRA judge, the Honorable Shelley Robins New, in rejecting Echols' claim, opined:

Next, [Echols] alleges trial counsel's ineffective assistance for failing to impeach Nicole Thompson with her prior conviction for Receiving Stolen Property, her multiple aliases, dates of birth and social security numbers and her probationary status at the times of the murder and trial. As noted below, even if the witness was so impeached, the outcome would not have changed.

From the prosecutor's direct examination and the cross examination, the jury was aware that the witness was a heroin addict, had used heroin prior to the killing and had fallen into a deep sleep as a result. Indeed, she was asleep when the robbery began. The jury also was aware that she used her daughter's name, Tarin Thompson[,] in an attempt to prevent the police from
discovering an outstanding arrest warrant. The jury also was aware that although she had seen [Echols] a few times after the killing, she did not contact the police because of the outstanding warrant.

From the cross examination, the jury also knew that even at the time of trial the witness was still a heroin addict; that she used drugs on the day of trial; that she intended to use drugs after she left the witness stand; that she used drugs the night before she gave a statement to police; that she was undergoing withdrawal symptoms ("nodding off" and feeling "dope sick") when she identified [Echols'] photograph and spoke to police; and that she previously had been in jail. Accordingly, even if this additional impeachment evidence was introduced, the outcome of the trial would not have changed.

PCRA Court Opinion, 5/24/2016, at 6.

Based on our review, we agree with Judge New's analysis that concludes that, given the extent of trial counsel's credibility attack of

Thompson, Echols failed to show he was prejudiced by trial counsel's cross examination that did not include additional impeachment information. **See** **Commonwealth v. Small**, 980 A.2d 549, 565-566 (Pa. 2009) (finding "Small was not prejudiced by counsel not cross-examining [eyewitness] about *crimen falsi* as that information would have just reiterated a significant credibility attack that already occurred; Small's counsel was highly effective in being able to show the jury all the holes in [eyewitness's] credibility"). Accordingly, we reject Echols' second ineffectiveness claim.

Echols next contends trial counsel was ineffective because he failed to object to the court's charge that did not inform the jury that the Commonwealth bore the burden of proving the voluntariness of Echols' statement to Detective Pirrone by a preponderance of the evidence. This very same argument was previously rejected by this Court in **Commonwealth v. Ort**, 581 A.2d 230 (Pa. Super. 1990), as follows:

> [The trial court's] instruction comports with the proposed Pennsylvania Standard Jury Instructions, sections 3.04B and 3.05. Appellant has cited no authority to support his position that the jury must be specifically instructed that the Commonwealth has the burden of proving the voluntariness of the confession by the preponderance of the evidence. In addition to the instructions quoted above relating specifically to the voluntariness of the confession, the jury in the present case was instructed that the Commonwealth had to prove that the crime had been committed by proof beyond a reasonable doubt. Had the jury mistakenly applied this standard to the determination of voluntariness, the error would have redounded to appellant's benefit. We find that the jury was amply instructed on the voluntariness of the confession, and there was no error in the instructions given to them. Consequently, counsel was not ineffective for failing to object to the instruction.

- 11 -

*Id.* at 234-235.

As in **Ort**, Echols cites no legal authority that requires a court to instruct the jury that it must disregard a defendant's statement unless it finds the statement is voluntary by a preponderance of the evidence.[6] In this case, the trial court charged the jury regarding the voluntariness of Echols' oral statement to police pursuant to Pennsylvania Suggested Standard Jury Instructions (Pa. S.S.J.I.) (Crim) 3.01, 3.04C and 3.04D. **See** N.T., 8/6/2007, at 144-147. The trial court also instructed the jury that the Commonwealth had the burden of proving that Echols was guilty beyond a reasonable doubt. **See** N.T., 8/6/2007, at 128-130. Applying **Ort**, no relief is due on this claim of trial counsel ineffectiveness.

Nor is there merit in the final claim of Echols that trial counsel was ineffective because he did not object to the court's charge concerning prior bad acts.

The specific portion of the jury charge that Echols relies upon in making this ineffectiveness claim is reproduced in Echols' brief, as follows:

> Ladies and gentlemen, I also gave you an instruction that I'm going to repeat for you again. You've heard testimony that the defendant has used drugs and had an altercation with George Paramour within approximately one week before his death, and that during this altercation the defendant is alleged to have

---

[6] Although there is a Suggested Standard Jury Instruction to this effect, **see** Pa.S.S.J.I. 3.04A, the instructions are not binding. **See Commonwealth v. Simpson**, 66 A.3d 253, 274 n.24 (Pa. 2013).

threatened Mr. Paramour with a knife and demanded drugs from him.

Ladies and gentlemen, the defendant is not on trial here for any of these offenses. This evidence is before you for a limited purpose and you may only consider this evidence for this limited purpose, and that purpose is to complete the story, that is, to provide you with background information about the relationship and interaction between the defendant and George Paramour shortly before George Paramour was killed.

Echols' Brief at 40, *quoting* N.T., 8/6/2007, at 142–143. The trial court continued:

This information is before you for a limited purpose and this limited purpose only. This evidence may not be considered by you in any way other than the purpose I've just stated. You must not regard this evidence as showing that the defendant is a bad person of bad character or criminal tendencies from which you might be inclined to infer guilt in this case.

N.T., 8/6/2007, at 143.

Echols argues that the trial court's charge "attached no burden of proof to these prior bad acts – and treated them as givens." Echols' Brief at 40. Echols maintains trial counsel was ineffective "because he did not object to the court's charge that allowed the jury to use testimony that [Echols] quarreled with George Paramour approximately one week before his death and also threatened him with a knife and demanded drugs from him without requiring the jury to first find these facts to be true beyond a reasonable doubt." Echols' Brief at 39. We are not persuaded by Echols' argument.

Evidence of a defendant's prior bad acts is generally inadmissible, and where such evidence is admitted, a defendant is entitled to a jury instruction

that the evidence is admissible only for a limited purpose. *Commonwealth v. Hutchinson*, 811 A.2d 556, 561 (Pa 2002), *citing* *Commonwealth v. Billa*, 555 A.2d 835, 842 (Pa. 1989). Here, the trial court's limiting instruction tracked the language of Pa.S.S.J.I. (Crim) 3.08. Therefore, trial counsel was not ineffective for failing to object to the instruction. *See Commonwealth v. Trivigno*, 750 A.2d 243, 252–253 (Pa. 2000) (counsel could not be deemed ineffective in failing to object to standard jury instruction). Moreover, as Judge New ably explained:

> Contrary to [Echols'] claim, the charge does not treat testimony as "as givens." The jury was told there was **testimony** about this evidence; that [Echols] was not on trial for those offenses, that there was a limited purpose for which the evidence was admissible; that in order to convict [Echols] the jury must be convinced beyond a reasonable doubt that [Echols] or an accomplice committed the charged crimes; and that they could not convict because of these past events. Moreover, in its charge, the trial court also instructed the jury that it was the sole judges of the facts and of the credibility of the witnesses and that it was free to believe all, part or none of each witness's testimony. See N.T. 8/6/07, 125, 126, 130. As noted above, the jury had ample impeachment evidence concerning this witness. Accordingly, contrary to [Echols'] claim, the charge did not treat this evidence "as given." In addition we find no legal support for [Echols'] claim that the charge should also have instructed as to a burden of proof for this prior bad evidence. Indeed we are at a loss to even understand the claim as the trial court properly instructed the jury about the elements of the charged crimes; about the limited use of the evidence of a prior bad act; about how to evaluate the credibility of all witnesses including Ms. Thompson; that the jury could not convict because of this evidence; and that in order to convict the jury must be convinced beyond a reasonable that [Echols] or an accomplice committed the crime. Accordingly, this claim … is baseless.

PCRA Court Opinion, 5/24/2016, at 7–8 (emphasis in original).

Therefore, for the reasons set forth above, we conclude no relief is due on Echols' final ineffectiveness claim.

Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2017