J-S26035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TODD RICHARD OYLER | : | |
| | : | |
| Appellant | : | No. 127 MDA 2022 |

Appeal from the PCRA Order Entered December 14, 2021
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0001246-2015

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: AUGUST 16, 2022**

Appellant, Todd Richard Oyler, appeals from the December 14, 2021, order entered in the Court of Common Pleas of Adams County, which denied Appellant's first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellant was arrested in connection with the sexual abuse of his stepdaughter ("the Victim"). On August 1, 2017, Appellant, who was represented by counsel,[1]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] At trial, Gerald Lord, Esquire was the "first seat attorney" for Appellant while Samuel Gates, Esquire was the "second seat attorney" for Appellant. N.T., 6/11/21, at 14-15.

proceeded to a jury trial. The trial court has summarized the testimony from the jury trial as follows:

> [The Victim] was born [in] November [of] 2003 and was fourteen years old on the dates of trial. The Victim testified that her Dad had majority custody, and she would go to her Mom and Appellant's house every weekend. The Victim testified that her Mom and Appellant initially lived in an apartment in Hanover (York County) and then moved to a house in New Oxford (Adams County). The Victim identified Appellant at trial as…her stepfather.

> The Victim testified that Appellant sexually abused her over a number of years. The Victim testified that the abuse started when she was four years old and continued until she was six or seven [years old]. The Victim testified that the sexual abuse started at her Mom and Appellant's apartment in Hanover and continued when her Mom and Appellant moved to the house in New Oxford. The Victim testified that the sexual abuse happened every weekend when she visited her Mom and Appellant[,] and [the incidents] would occur in her bedroom at night while everyone [else] was asleep.

> The Victim testified that Appellant called his penis "dragon." The Victim testified Appellant made the Victim lick his "dragon," [and] Appellant would lick the Victim's vaginal area[.] Appellant would make the Victim sit on top of him while he was lying down and make the Victim rub her vaginal area across Appellant's "dragon"….Appellant also touched the breasts and vaginal areas of the Victim with his hands. The Victim testified Appellant put his fingers in the hole of the Victim's vaginal area and told the Victim "it had to stretch," referring to the Victim's vagina.

> The Victim testified that she did not remember the sexual acts occurring when she was eight or nine [years old]. The Victim also testified these sexual acts stopped after Appellant was diagnosed with cancer, which occurred when the Victim was in fourth grade. The Victim testified that the touching resumed when the Victim was in fifth grade, which coincided with Appellant recovering from cancer. The Victim testified the last abuse happened in October [and April] of fifth grade…, and Appellant touched her breasts, butt[,] and legs.

> The Victim testified that her friend, L.D., was the first person the Victim told concerning Appellant sexually abusing her. This occurred while the Victim and L.D. were in fifth grade. L.D.

testified that the Victim told her in April of fifth grade that her stepfather had sex with her and touched her private areas. L.D. told her parents about the abuse that night. Erin Driesbach testified that in April [of] 2015 she worked for Adams County Children and Youth Services. Ms. Driesbach had received a referral concerning sexual abuse of the Victim and interviewed the Victim at her school in New Oxford on April 10, 2015.

Other trial testimony revealed that Appellant was forty-nine years old on August 1, 2017. Appellant started dating…the mother of the Victim in 2005[,] and [he] moved in with the Victim's mother at *** York Street, Hanover, York County, Pennsylvania, on November 1, 2010. The Victim turned four [years old] [in] November [of] 2007. Appellant was diagnosed with cancer [in] June [of] 2013.

Trial Court Opinion, filed 5/2/18, at 1-3.

At the conclusion of trial, the jury convicted Appellant of two counts of involuntary deviate sexual intercourse with a child, and one count each of unlawful contact with a minor, aggravated indecent assault, indecent assault, and corruption of minors.[2] On October 17, 2017, the trial court sentenced Appellant to an aggregate of sixteen years to forty years in prison.

Appellant filed a timely direct appeal contending the verdict was against the weight of the evidence; Appellant was deprived of his due process rights to confrontation at his preliminary hearing; the trial court erred in removing a juror on the final day of trial; and Appellant was deprived of his due process rights when the Commonwealth failed to provide an adequate Bill of Particulars.

---

[2] 18 Pa.C.S.A. §§ 3123(b), 6818(a)(1), 3125(a)(7), 3126(a)(7), and 6301(a)(1)(i), respectively.

- 3 -

Concluding Appellant was not entitled to relief, this Court affirmed his judgment of sentence on November 7, 2018.  *See Commonwealth v. Oyler*, No. 396 MDA 2018 (Pa.Super. filed 11/7/18) (unpublished memorandum). Appellant filed a timely petition for allowance of appeal, which our Supreme Court denied on July 23, 2019.  Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court.

New counsel entered his appearance on behalf of Appellant, and on August 19, 2020, Appellant filed a timely, counseled PCRA petition, which counsel later supplemented. On June 11, 2021, the PCRA court held an evidentiary hearing, and by order filed on December 14, 2021, the PCRA court denied Appellant's PCRA petition.  This timely, counseled appeal followed on January 13, 2022.  All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

> I.    Whether Appellant's trial counsel rendered ineffective assistance of counsel by failing to impeach the Victim with prior inconsistent statements, physical evidence, and testimony from her mother?
>
> II.   Whether Appellant's trial counsel rendered ineffective assistance of counsel by failing to provide him with accurate legal advice regarding character witnesses, and failing to conduct a reasonable investigation into whether to call character witnesses that were able and willing to testify on Appellant's behalf?

Appellant's Brief at 4 (suggested answers and unnecessary capitalization omitted).

- 4 -

Initially, we note our standard of review for an order denying PCRA relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. ***Commonwealth v. Sattazahn***, 597 Pa. 648, 952 A.2d 640, 652 (2008). "We must accord great deference to the findings of the PCRA court, and such findings will not be disturbed unless they have no support in the record." ***Commonwealth v. Scassera***, 965 A.2d 247, 249 (Pa.Super. 2009) (citation omitted).

On appeal, Appellant challenges the effectiveness of his trial counsel. Because there is a presumption that counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. ***Commonwealth v. Ali***, 608 Pa. 71, 10 A.3d 282 (2010). To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." ***Id.***, ***supra***, 10 A.3d at 291 (citations omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Id.*** Notably, "[c]ounsel cannot be deemed ineffective for failing to raise a meritless claim." ***Commonwealth v. Johnson***, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (citation omitted).

In his first issue, Appellant claims trial counsel was ineffective in failing to impeach certain aspects of the Victim's direct testimony during the defense's cross-examination of the Victim and/or during the defense's direct examination of the Victim's mother.[3]

Specifically, Appellant claims trial counsel should have impeached the Victim's testimony that she was sexually assaulted by Appellant with evidence of her prior inconsistent statement. In this regard, Appellant contends that, at the PCRA hearing, the Victim's mother testified that, approximately six months prior to when the Victim reported her accusations of sexual abuse, the Victim, in her mother's presence, "advised [her] doctor that she had neither been sexually active nor abused." Appellant's Brief at 16. Appellant contends trial counsel should have used this prior inconsistent statement for impeachment purposes during the cross-examination of the Victim and/or during the direct examination of the Victim's mother.

Further, Appellant contends trial counsel was ineffective in failing to impeach the Victim's testimony that Appellant closed the bedroom door at the York Street apartment while he was sexually abusing her. In this regard, Appellant indicates that, at the PCRA hearing, the Victim's mother testified the

---

[3] The Commonwealth called the Victim as a witness during trial, and Appellant's trial counsel cross-examined her, as well as twice recross-examined her. The defense called the Victim's mother as a witness during trial, and Appellant's trial counsel examined her on direct, as well as on redirect.

- 6 -

"apartment on York Street was exceedingly small, in fact 900 square feet,…[and the Victim's] bedroom door was always open and would not close because a changing table was in the way." *Id.* Appellant contends trial counsel should have used the evidence of "the physical layout of the York Street home," including that the bedroom door would not close, to demonstrate it was "virtually impossible for Appellant to have sexually assaulted [the Victim] without her mother's knowledge over the course of two years." *Id.* at 17.

It is well-settled that "[a] failure to impeach a key witness is considered ineffectiveness in the absence of a reasonable strategic basis for not impeaching." *Commonwealth v. Small*, 602 Pa. 425, 980 A.2d 549, 565 (2009) (citation omitted).

Here, as to Appellant's claim trial counsel was ineffective in failing to impeach the Victim on cross-examination regarding an alleged prior inconsistent statement that she made to her doctor,[4] as well as the physical

---

[4] Appellant also suggests trial counsel should have cross-examined "the Victim with a prior statement alleging that Appellant had forced her to shower with him, an accusation that she did not make at trial[.]" Appellant's Brief at 17. Attorney Lord testified at the PCRA hearing that he did not cross-examine the Victim about her prior allegation as it would "highlight" for the jury an out of court accusation against Appellant to which the Victim did not testify at trial. N.T., 6/11/21, at 82. The PCRA court concluded trial counsel had a reasonable basis for his strategic decision, and we find no error. *See Commonwealth v. Williams*, 636 Pa. 105, 141 A.3d 440 (2016) (setting forth principles of law regarding the reasonable basis prong of the ineffective assistance of counsel test).

layout of the York Street apartment, the PCRA court concluded trial counsel provided a reasonable basis for his trial strategy.

Regarding the reasonable basis prong of the ineffective assistance of counsel test, our Supreme Court has relevantly stated the following:

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest….[T]his cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests." Our evaluation of counsel's performance is "highly deferential."

***Commonwealth v. Williams***, 636 Pa. 105, 141 A.3d 440, 463 (2016) (citations and quotations omitted).

At the PCRA hearing, on direct examination by PCRA counsel, Attorney Lord relevantly testified as follows:

> [T]he strategy I was employing in this case in terms of cross-examination of [the Victim], and I want to say this because I [am] assuming it's going to come up a few more times, there were things coming out in the trial through other Commonwealth witnesses that differed from what she was stating in court either through direct or cross-examination.
>
> And in this particular case, after [the Victim] testified on direct examination, she gave very compelling and persuasive and credible testimony. And I took that into consideration when I began to cross-examine her. And I also sensed that if I—based on the way she was—her demeanor was in court, I sensed that if I pushed her on inconsistencies, connect with what she said to other people, that was most of which was coming in at trial, rather than just bringing it out on my closing statements, which I tried to do, she was going to break down and start crying in front of the jury. And I was concerned about the impact that might have.

So, sometimes I'll cross-examine a victim if I think I can do it without raising concern on the part of the jury of me attacking the witness.

In this particular case, I judged that it was going to be a better idea to let her say what she said and let the other—the jury was hearing what she said to the interviewers and then bring out what I could or what I could remember about the inconsistencies in my closing argument.

***

Some of the decisions I made about cross-examining her were made based on the fact that her demeanor was such that I was being careful [as to] what I did cross-examine her about. And I knew that the jury had heard her inconsistent statements that were put in the record.

***

[M]y strategy in this case was to bring out examples of inconsistencies in [the Victim's] testimony, knowing that the jury heard these inconsistencies, [during] closing statement.

***

But there were quite a few inconsistencies that all came out through other testimony and witnesses in the trial. Based on my strategy not to attack her because you could tell by her demeanor she did break down, I was concerned about what impact that would have with the jury, I decided to let the jury—I relied on the jury to remember the inconsistencies and I brought some of them up in closing.

N.T., 6/11/21, at 29-30, 33, 53.

Additionally, Attorney Lord testified on cross-examination at the PCRA hearing that he was hesitant to question the Victim vigorously on cross-examination at trial because he did not want to alienate the jury. *Id.* at 79. He reiterated that he brought out many inconsistencies in the Victim's testimony via the testimony of other witnesses, including Appellant and the

- 9 -

Victim's mother, and he was concerned the Victim would "break down" in front of the jury if he "pushed too hard" on cross-examination. *Id.* at 79-80.

Attorney Gates confirmed at the PCRA hearing that he and Attorney Lord discussed trial strategy. He indicated that, with the Victim being a young child, Attorney Lord had to be "careful on what" to impeach the Victim on so the "jury [didn't] feel that [he was] beating up on her." *Id.* at 127.

We agree with the PCRA court that trial counsel offered a reasonable strategic basis for the scope of impeachment of the Victim on cross-examination. As the PCRA court indicated:

> [Appellant's] argument neglects to acknowledge both the difficulty inherent in trial counsel's cross-examination of the Victim and the necessity of careful professional judgment in this challenging task.
>
> ***
>
> [C]ross-examination of a child victim is fraught with peril and admits of no bright-line rules….The decision of whether, and to what extent, to cross-examine a child,…alleged to be the victim of sexual misconduct by a defendant, is one of the most difficult challenges facing a trial lawyer. In sexual abuse cases involving young victims, [a] vigorous and slashing cross-examination is rarely appropriate; [defense counsel's] general goal is to undermine the consistency of the child's story and to suggest the child may have been influenced to exaggerate or fabricate-- leaving much to final argument.
>
> Here, in view of the Victim's believability and apparent emotional fragility during her trial testimony, trial counsel made a sound professional judgment not to wage a full-scale attack on the Victim's credibility during cross-examination….[T]rial counsel had a reasonable basis for caution when cross-examining the Victim.

PCRA Court Opinion, filed 12/14/21, at 10-12 (quotation and quotation marks omitted). We agree with the PCRA court's sound reasoning and conclude Appellant is not entitled to relief on this ineffectiveness claim. *See Williams*, *supra*.

Regarding Appellant's claim trial counsel should have questioned the Victim's mother on direct examination at trial about the Victim allegedly reporting to her doctor she had not been sexually abused, Attorney Lord testified at the PCRA hearing that he has no recollection of Appellant or the Victim's mother advising him that the Victim made this alleged statement to her doctor. N.T., 6/11/21, at 90. He noted the medical records made no mention of the Victim's alleged out of court statement. *Id.*

Accordingly, assuming, *arguendo*, that the Victim's mother's testimony as to the alleged out of court statement, which the Victim made to her doctor, would have been admissible as impeachment evidence via the Victim's mother's direct testimony at trial, we agree with the PCRA court that Attorney Lord provided a reasonable basis for not utilizing the statement. That is, there is no evidence Attorney Lord knew or should have known about the alleged statement. *Ali*, *supra*.

As to Appellant's claim trial counsel was ineffective in failing to question the Victim's mother about the physical layout of the York Street apartment, we note trial counsel questioned the Victim's mother about the apartment during direct examination at trial. N.T., 8/2/17, at 200-06. Specifically, the

Victim's mother testified at length about the layout of the apartment and indicated the family kept the doors to rooms open. *Id.*

In any event, to the extent Appellant claims trial counsel should have elicited from the Victim's mother that one of the bedroom doors could not physically be shut since it was partially blocked by a changing table while the family lived at the York Street address, Attorney Lord testified neither Appellant nor the Victim's mother informed him that the door could not be closed. N.T., 6/11/21, at 41. Further, Attorney Lord suggested that, in his view, it was inconsequential for the jury to hear that one of the bedroom doors could not be shut since the Victim's mother testified the family kept the doors open. *Id.* at 85-86.

We agree with the PCRA court that Attorney Lord provided a reasonable basis for not specifically asking the Victim's mother whether the bedroom door was able to be closed. *See Ali*, *supra*. That is, there is no evidence Attorney Lord knew or should have known that a changing table partially blocked the door while the family lived in the York Street apartment. *Ali*, *supra*. Moreover, given that the Victim's mother testified the doors were left open, we conclude Appellant has failed to demonstrate any prejudice by counsel's omission. *See Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 701 (1998) ("[I]f it is clear that [an] [a]ppellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone[.]").

In his next issue, Appellant claims trial counsel was ineffective in providing inaccurate advice to him as to what constituted a character witness and in failing to investigate whether potential character witnesses existed. We conclude Appellant is not entitled to relief.

Appellant contends that, prior to trial, his counsel "explained to [him] that, in order to call a character witness at trial, the witness cannot know the defendant personally, and can only testify about his reputation in the community." Appellant's Brief at 24. Appellant suggests that counsel's mistaken advice that Appellant could not "personally" know his character witnesses led to Appellant failing to provide trial counsel with the names of various character witnesses. Thus, Appellant contends trial counsel was ineffective.

The admission of character evidence is controlled by Pa.R.E. 404 and 405. According to Pa.R.E. 404(a)(2)(A), "a defendant may offer evidence of the defendant's pertinent trait[.]" The official comment to Pa.R.E. 404 further clarifies that subsection (a)(2)(A) "allows the defendant to 'put his character in issue,' usually by calling character witnesses to testify to his good reputation for a law-abiding disposition, or other pertinent trait of character." Pa.R.E. 404, Comment. Pursuant to Pa.R.E. 405(a): "When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation. Testimony about the witness's opinion as to the character or character trait of the person is not admissible."

- 13 -

This Court has explained:

Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. Such evidence must relate to a period at or about the time the offense was committed and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor.

*Commonwealth v. Radecki*, 180 A.3d 441, 453–54 (Pa.Super. 2018) (quotation omitted). *See generally Commonwealth v. Luther*, 463 A.2d 1073 (Pa.Super. 1983) (holding that, in a rape case, evidence of the character of the defendant would include testimony concerning his general reputation in the community with regard to such traits as non-violence, good moral character, chastity, and disposition to observe good order).

Here, assuming, as Appellant suggests, there is no prohibition on a character witness personally knowing a defendant, we conclude Appellant has failed to meet his burden of proving that trial counsel provided him with advice to the contrary.

During the PCRA hearing, Attorney Lord testified he recalled discussing with Appellant character witnesses and explaining the importance of character witnesses. N.T., 6/11/21, at 63. Attorney Lord testified he advised Appellant as follows regarding character witnesses:

So, I remember talking to [Appellant] about [character witnesses]. And I told him that in Pennsylvania it's kind of an awkward rule, but if you are in a community, I said it could be your employment community, your neighborhood community, if you go to church or church community, even your family

- 14 -

community, if you're in a community and in that community you know people and those people know you and they also know other people in that community that know you and they heard your reputation being discussed for personal character traits, they're allowed to come in to court and tell the Court and the jury that, yeah, I know [Appellant], I know other people in this particular community that know [Appellant] and his reputation in the community for pertinent character traits is good.

*Id.* at 63-64.

Attorney Lord specifically testified he never told Appellant or the Victim's mother that the character witnesses could not personally know Appellant. *Id.* at 66. Attorney Lord testified that he "would never call a witness who does not know someone as a character witness." *Id.* at 97.

Attorney Gates testified that he was present during a meeting with Attorney Lord and Appellant. *Id.* at 116-17. During this meeting, Appellant reported there were "not too many people that would be available to come and say that he was a law-abiding, nice guy." *Id.* at 117. He testified Appellant told him and Attorney Lord that he "didn't have a big cycle [*sic*] of friends[.]" *Id.* He indicated Appellant described himself as a "loner" without friends at work. *Id.* at 128. As to whether Attorney Gates told Appellant that character witnesses could not personally know him, Attorney Gates indicated he could not "imagine [he] would have said that [to Appellant] because it's not what I believe to be true." *Id.* at 119.

In its opinion, the PCRA court specifically indicated it found Attorney Lord's and Attorney Gates' testimony in this regard to be credible. *See* PCRA Court Opinion, filed 12/14/21, at 8. Thus, the PCRA court found there was no

- 15 -

arguable merit to Appellant's underlying claim. *Id.* We are bound by the PCRA court's credibility determinations, and we find no error in this regard. *See Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523 (2009).

Appellant next claims trial counsel was ineffective in failing to investigate potential character witnesses. Appellant claims he had numerous character witnesses who would have testified on his behalf during trial.

With regard to the failure to investigate potential witnesses, our Pennsylvania Supreme Court has held as follows:

> Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary....The duty to investigate...may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance....
>
> [W]here there is a limited amount of evidence of guilt, it is *per se* unreasonable not to attempt to investigate and interview known eyewitnesses[5] in connection with defenses that hinge on the credibility of other witnesses....
>
> [S]uch a *per se* failing as to performance, of course, does not make out a case of prejudice....

_____

[5] We note this Court has explained that:
> [A] failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Pander*, 100 A.3d 626, 638-39 (Pa.Super. 2014) (*en banc*) (quotation marks and quotation omitted).

- 16 -

***Johnson***, ***supra***, 966 A.2d at 535–36 (citations omitted) (footnote added).

During the PCRA hearing, Attorney Lord testified character witnesses are "a big issue with him," and he had "at least two meetings" with Appellant about character witnesses. N.T., 6/11/21, at 63. He testified:

> I remember talking to [Appellant] about where he lived and where he worked. And he told me that he had no one he could offer to me that I could use as a character witness for him. And we talked about that more than once. And I never—unfortunately, never was told by him that he had anybody in any community he was in that he could offer as a character witness at trial.

***Id.*** at 65.

On cross-examination, Attorney Lord confirmed that, with regard to character testimony, he talked to Appellant about the significance of such testimony, but Appellant "was unable to provide [him] with any character witness information[.]" ***Id.*** at 86.

Attorney Gates confirmed that on "at least one occasion or more than one occasion…we talked about, you know, [the] need [for] the character witnesses." ***Id.*** at 117. However, he indicated the discussions with Appellant as to this topic were not "fruitful [and Appellant] couldn't come up with any at the time." ***Id.***

On cross-examination, Attorney Gates confirmed he and Attorney Lord discussed character witnesses with Appellant, but Appellant "didn't seem…[to have] anybody that he could present as character witnesses." ***Id.*** at 126.

In its opinion, the PCRA court specifically indicated it found Attorney Lord's and Attorney Gates' testimony in this regard to be credible. ***See*** PCRA

Court Opinion, filed 12/14/21, at 9. The PCRA court specifically found that, despite being asked by counsel, "Appellant never provided counsel with the names of potential character witnesses." *Id.* The PCRA court concluded there was no evidence counsel knew or should have known of the existence of any character witnesses, and counsel properly investigated whether such witnesses exited. *See id.* Thus, the PCRA court found there was no arguable merit to Appellant's underlying claim. *Id.* We are bound by the PCRA court's credibility determinations, and we find no error in this regard. *See Johnson*, *supra*.

For all of the foregoing reasons, we affirm the PCRA court's denial of Appellant's first PCRA petition.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/16/2022