J-S09023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HUBERT W. WINGATE | : | |
| | : | |
| Appellant | : | No. 896 WDA 2022 |

Appeal from the PCRA Order Entered July 14, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006412-2015

BEFORE: BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED: APRIL 25, 2023**

Hubert W. Wingate appeals from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

Appellant is serving a sentence of life imprisonment based upon his convictions of crimes stemming from the murder of Andre Gray. We summarized the underlying facts as follows on Appellant's direct appeal:

> At trial, there was no dispute that Gray was murdered. The only factual dispute centered on who killed Gray. And this dispute was essentially binary: Raymond Schifino testified that [Appellant] admitted to shooting Gray, while [Appellant]'s testimony strongly implied Schifino was the shooter.
>
> Schifino testified [Appellant] texted him on the night of [October 22, 2014], threatening to kill Gray. Later that night, [Appellant] told Schifino he had killed Gray. [Appellant] vaguely asked Schifino to help him in the morning.
>
> The next morning, [Appellant] picked up Schifino, driving Gray's car. The pair drove to a different neighborhood and smoked marijuana until it got dark. At some point after 10 p.m.,

[Appellant] drove to Gray's home. They entered the home through an open back door. As they entered the living room, Schifino saw Gray lying dead on some cushions on the floor. [Appellant] asked Schifino to help him clean up and dispose of Gray's body.

They wrapped up Gray's body in sheets that they found under the body. [Appellant] told Schifino to kill Gray's dog, and use the dog's blood to cover any of Gray's blood that remained.

A noise spooked them, so they placed Gray's body in a garbage can to transport it outside. They put Gray and his dog's body in the backseat of Gray's car. They stole Gray's laptop computer, PlayStation console, and some of his clothing and placed them in the trunk of the car. The two then[, in the presence of friend Eric Crawford,] disposed of Gray's body in a river near [Crawford's] home.

*Commonwealth v. Wingate*, 201 A.3d 839 (Pa.Super. 2018) (unpublished memorandum at 2-3) (cleaned up). The following day, Appellant instructed Schifino to set fire to Gray's car, and Schifino complied.

In February 2015, Appellant, unlawfully in possession of a firearm, was detained on a warrant in an unrelated matter, and admitted to having taken possession of Gray's property, including Gray's PlayStation which was shown to have been used at Appellant's IP address following the murder, but denied having stolen the items. Gray's body was ultimately recovered from the Ohio River by authorities in West Virginia. A projectile found during an autopsy of Gray's body was determined to have been fired from the gun Appellant possessed when detained.

Appellant, facing charges of murder, conspiracy to commit arson, and several theft and firearms offenses, elected to proceed to a non-jury trial. The

Commonwealth presented various witnesses and other evidence, such as cellular telephone records, to establish the above-described facts. After the trial court colloquized Appellant about his lack of obligation to provide any defense, as well as his rights to testify on his own behalf or to provide alibi and character witnesses, the defense presented Appellant's testimony and rested. The trial court convicted Appellant of the above-listed crimes and sentenced him to an aggregate term of life plus eleven to twenty-two years. Appellant's direct appeal yielded no relief. **See Wingate**, **supra**, *appeal denied*, 206 A.3d 488 (Pa. 2019).

On August 22, 2019, Appellant filed a timely, *pro se* PCRA petition. Therein, Appellant asserted seventeen issues ranging from attacks on the sufficiency of the evidence to sustain some of his convictions, to prosecutorial misconduct, to trial court bias, to ineffective assistance of counsel in, *inter alia*, failing to investigate or present an alibi defense. **See** PCRA Petition, 8/22/19, at Attachment 2 (continuation of page 7, question 14). Appellant included with his filing an affidavit from his mother, Yolanda Wingate, who described her interactions with Appellant surrounding the time of Gray's murder, indicated that she had never liked Schifino, and opined that Appellant had received inadequate representation. **Id**. at Attachment 1.

The PCRA court appointed counsel who filed an amended petition. The amended petition raised only one of the claims Appellant asserted in his *pro se* petition, namely that trial counsel had been ineffective in failing to call

- 3 -

witnesses. *See* Amended PCRA Petition, 2/16/22, at 10-12. In addition to re-submitting the affidavit from Appellant's mother, counsel provided one from Appellant's sister, Camisha Wingate, who indicated that Schifino dropped Appellant and a PlayStation off at her hotel in Harmarville, where she was staying as part of a witness protection program, that their mother came to pick them up there because Camisha did not like staying in the hotel alone, and that they all went to Buffalo Wild Wings for dinner before adding the PlayStation to the collection of consoles already at their mother's house for multiplayer online gaming. *Id*. at Exhibit A. The amended petition alleged that Appellant's trial counsel had represented to PCRA counsel that she had no recollection of being informed of any witnesses to call in Appellant's defense. *Id*. at 10-11.

The Commonwealth filed a response to the amended petition, arguing that Appellant was unable to meet his burden for relief on his claim. The PCRA court agreed and issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Specifically, the court stated, after refreshing its memory of the trial over which it presided, that Appellant was not prejudiced by the absence of the testimony because the result would have been the same. *See* Order ("Rule 907 notice"), 4/4/22, at unnumbered 2.

PCRA counsel requested an extension of time to respond to the dismissal notice, indicating that Appellant had "been in communication with counsel regarding the [c]ourt's notice, and regarding the contents of future filings with

the [c]ourt." Motion, 5/3/22, at 2. The PCRA court granted an extension. Appellant, through PCRA counsel, subsequently filed two items: (1) a response to the Rule 907 notice and (2) a motion to amend the PCRA petition pursuant to Pa.R.Crim.P. 905(A).

In the former, Appellant pointed to record evidence suggesting that trial counsel either knew or should have known of the existence of the witnesses in question, and that an evidentiary hearing was necessary. In the latter, PCRA counsel reiterated that Appellant expressed to her an interest in raising additional issues and "urge[d] the court to allow counsel an opportunity to file an all-encompassing amended PCRA petition which includes new issues before filing any final order." Motion to Amend, 5/14/22, at ¶ 7. Notably, counsel offered no hint as to the substance of any of the new claims Appellant desired to plead. By order of July 12, 2022, the PCRA court dismissed Appellant's PCRA petition for the reasons stated in its Rule 907 notice and advised Appellant of his appeal rights. The court did not rule on the motion to amend.

Appellant filed a timely notice of appeal. The PCRA court did not order Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none. The PCRA court entered an order indicating that the reasons for its decision were already of record such that no Rule 1925(a) opinion would be provided.

Appellant presents the following issues for this Court's consideration:

I.    The PCRA court erred in denying relief before ruling on [Appellant]'s motion to amend the pending PCRA Petition pursuant to Pa.R.Crim.P. 905(A).

II.    The PCRA court erred in denying relief without holding an evidentiary hearing where trial counsel was ineffective for failing to call available witnesses for the defense.

Appellant's brief at 4 (cleaned up).

We begin with the applicable legal principles. "In general, we review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." *Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up).

As to legal questions, we apply a *de novo* standard of review to the PCRA court's legal conclusions, and this Court may affirm a PCRA court's order on any legal basis. As to factual questions, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party in the lower court. Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.

*Id*. (cleaned up). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant first asserts that the PCRA court erred in dismissing his petition without ruling on his motion to amend it. Pertinent to our consideration, Rule 905 provides: "The judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice."

Pa.R.Crim.P. 905(A). The use of the word "may" in the rule indicates that the decision is left to the discretion of the PCRA court. *See*, *e.g.*, *Commonwealth v. Crispell*, 193 A.3d 919, 930 (Pa. 2018).

The purpose of Rule 905 is "to provide PCRA petitioners with a legitimate opportunity to present their claims to the PCRA court in a manner sufficient to avoid dismissal due to a correctable defect in claim pleading or presentation." *Commonwealth v. McGill*, 832 A.2d 1014, 1024 (Pa. 2003). "Adherence to this liberal standard for amendment is essential because criminal defendants may have just one opportunity to pursue collateral relief in state court." *Crispell*, *supra* at 930.

Citing *Crispell*'s recognition of the importance of allowing PCRA petitioners to fully realize their opportunity for state-court review of collateral attacks upon their convictions, Appellant argues that the PCRA court erred in not considering and granting his motion to amend. *See* Appellant's brief at 14. The Commonwealth counters that, because the motion to file a second amended petition identified no additional claims that counsel deemed worthy of presenting, it was in effect just "a request to file an amended PCRA petition sometime in the future" that the PCRA court *de facto* denied it by dismissing the pending petition rather than granting leave to amend it. *See* Commonwealth's brief at 19-20 (cleaned up). The Commonwealth suggests that, since Appellant had been afforded the opportunity to file a counseled

amended petition, Rule 905(A) had already been satisfied such that, in the absence of any concrete proposed additional claims, no relief is due. *Id*.

We agree with the Commonwealth. Not only did Appellant fail to present any specific claims to the PCRA court that substantial justice required granting him leave to amend, but Appellant's brief to this Court still lacks any identification of what issues he believes he should have been permitted to pursue. We are not persuaded that the failure to grant *carte blanche* for the filing of a second amended petition to raise unidentified new claims, after the court had proffered its reasons for rejecting the first one, warrants relief. **See Commonwealth v. Williams**, 732 A.2d 1167, 1191 (Pa. 1999) ("The assertion of a new claim after the court has heard argument and indicated its intent to dismiss the petition militates in favor of the decision to deny leave to amend."); **Commonwealth v. Maze**, 264 A.3d 353 (Pa.Super. 2021) (non-precedential decision at 10) (affirming dismissal of PCRA petition upon denying a motion to amend it where the Appellant did not "identify any meritorious issues he could have raised in an amended petition"). Therefore, Appellant has failed to meet his burden as to his first assertion of error. **See Stansbury**, **supra** at 161 (noting that an appellant must show both that the PCRA court erred and that the error entitles him to relief).

Appellant's remaining argument is that the PCRA court improperly dismissed his claim of ineffective assistance of trial counsel without holding a

hearing. Pertinent to our disposition of these contentions, we observe as follows:

> The right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.
>
> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, the petitioner must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.

*Commonwealth v. Grayson*, 212 A.3d 1047, 1054 (Pa.Super. 2019) (cleaned up). We have further observed that,

> to satisfy the prejudice prong of this test when raising a claim of ineffectiveness for the failure to call a potential witness at trial, . . . the PCRA petitioner must establish that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Miller*, 231 A.3d 981, 992 (Pa.Super. 2020). Further, "'[i]f it is clear that [the a]ppellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine

whether the first and second prongs have been met.'" ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010) (quoting ***Commonwealth v. Albrecht***, 720 A.2d 693, 701 (Pa. 1998)).

The PCRA court offered two reasons why the proposed testimony of Appellant's mother and sister did not warrant PCRA relief.  The court indicated that trial counsel and Appellant made contradictory representations about whether the witnesses were known to counsel, presenting "a clear test of credibility and one the [c]ourt [wa]s not willing to make in [Appellant's] favor." Rule 907 notice, 4/4/22, at unnumbered 2.  The court also described the witnesses' affidavits as offering alibi evidence that conflicted with the testimony of other witnesses that it had credited at trial, such that it was convinced, "without the slightest bit of hesitation, that the proposed testimony of [Appellant's] mother and sister would not have changed the [c]ourt's determination of guilt." ***Id***.

Appellant argues that "the PCRA court was required to hear from [the] proposed witnesses, as well as trial counsel, before making any credibility determinations and resolving whether [Appellant] established his ineffective assistance of trial counsel claim."  Appellant's brief at 19-20.  Appellant further maintains that he established all of the elements of his claim because the witnesses indicated that they were ready and willing to testify to the contents of their affidavits at trial, that trial counsel had no reasonable basis not to call them, and that the verdict would likely have been different had they been

called. *Id*. at 18. Appellant insists that they had critical "information on [Appellant's] movements surrounding the time of the underlying homicide." *Id*. In particular, Appellant states:

Yolanda Wingate would testify that [Appellant] was at her home on October 22, 2014, at which time he fell down the steps and sprained his ankle. Yolanda Wingate provided crutches for him. She maintained contact with him throughout the 23rd and 24th, and arranged for him to meet up with her and his sister, Camisha, on the evening of the 24th.

Similarly, Camisha Wingate would testify that on October 24, 2014, [Appellant] arrived at a hotel in Harmarville where she was staying as part of the witness protection program. He was dropped off by Raymond Schifino. From there, Camisha, Yolanda and [Appellant] went for dinner at Buffalo Wild Wings.

*Id*. at 18-19.

Furthermore, Appellant argues that "both Yolanda and Camisha provide more information about Raymond Schifino." *Id*. at 19. He argues that "[t]his is significant because Schifino was, ultimately, the prosecution's main witness that connected [Appellant] to the homicide. Schifino was offered a deal in exchange for his testimony. . . . Consequently, the added information that Yolanda and Camisha provide would have elevated [Appellant's] defense." *Id*.

We agree with Appellant that, generally speaking, PCRA courts should not make credibility determinations without holding a hearing to make a record to support their findings. *See*, *e.g.*, *Commonwealth v. Khalifah*, 852 A.2d 1238, 1240 (Pa.Super. 2004) (reversing dismissal of a petition without a hearing where the PCRA court determined that the affidavit of an

- 11 -

uncalled alibi witness "lacked credibility in comparison to the facts that were established at [the defendant's bench] trial").

However, the Commonwealth aptly observes that a close examination of the affidavits at issue reveals that they do not actually contradict the evidence that Appellant murdered Gray. The Commonwealth explains as follows:

> The [trial] evidence established that [Gray] was most likely killed in the early morning hours of October 23, 2014. . . . [Gray's] PlayStation was in use at his residen[ce] on the evening of October 22, and into the early morning hours of October 23. There was a text exchange between Appellant and the victim that took place at approximately 6:45 a.m. on the morning of October 23. After that time, no one was ever able to contact him again, despite numerous attempts on October 23 and October 24. The PlayStation game system that was taken from the victim's residence was used at Appellant's residence and at other locations Appellant frequented starting on October 25. The murder weapon was stolen from a woman with whom Appellant had spent several nights. She suspected Appellant had taken the firearm. Appellant was found in possession of the firearm at the time of his arrest and it was determined that a bullet recovered from the victim's head was fired from that gun. Furthermore, Schifino testified that Appellant had admitted to the murder, and that Schifino helped Appellant dispose of the victim's body. Testimony from [eyewitness] Crawford established that Appellant and Schifino threw the victim's body in the river. . . .
>
> [A]ssuming *arguendo* that the statements contained in the affidavits provided by Appellant's mother and sister were true, this would do nothing to contradict the evidence that was presented at trial. Appellant's mother's affidavit discusses his being present at home on the evening of October 22, but states that he went to bed. No time exact time was provided, but his mother appears to have had no in-person contact with him from that time until the evening of October 24. As the murder occurred in the early morning hours of October 23, her testimony would not have contradicted anything presented at trial.

Similarly, the affidavit of Appellant's sister only discusses seeing Appellant on the evening of October 24. It provided no information regarding his whereabouts on October 22 or October 23. Neither of the affidavits states that . . . Appellant's mother or his sister saw him during the late night/early morning hours of October 22 until the evening of October 24. Thus, even taken at face value, this testimony would be of little, if any, relevance to the whereabouts of Appellant at the time of the murder and disposal of the body.

Commonwealth's brief at 28-30 (cleaned up).

Appellant's mother and sister did not propose to offer evidence that would preclude Appellant from having murdered Gray. Specifically, nothing about the timing of their interactions with Appellant or Appellant's suffering from an ankle sprain, are inconsistent with his shooting Gray in Gray's apartment and then enlisting Schifino to help him dispose of the body and Gray's car. Therefore, we cannot conclude that the absence of the testimony of Appellant's mother and sister "was so prejudicial as to have denied the defendant a fair trial." *Miller*, *supra* at 992. *See Commonwealth v. Prater*, 256 A.3d 1274, 1284–85 (Pa.Super. 2021) (affirming denial of claim that counsel was ineffective for failure to call witness because witness's testimony would not have benefited the defense).

Since Appellant has failed to plead facts to establish the prejudice prong of his claim of ineffective assistance of counsel, we affirm without considering whether Appellant pled sufficient facts to warrant a hearing on the other prongs of his claim. *See Ali*, *supra* at 291 (observing that, where the defendant cannot establish that the outcome of the proceedings was adversely

- 13 -

affected by counsel's omission, the claim is properly dismissed on that basis alone).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/25/2023